James P. Flynn
EPSTEIN BECKER & GREEN, P.C.
One Gateway Center
Newark, NJ 07102
Tel: 973.642.1900
jflynn@ebglaw.com
Attorneys for Plaintiff
    Securitas Security Services USA, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Securitas Security Services USA, Inc.,<br><br>              Plaintiff,<br><br>       - against -<br><br>Lockheed Martin Corporation,<br><br>              Defendant. | Civil Action No. _____ (___)(___)<br><br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, Securitas Security Services USA, Inc., ("Securitas"), through its attorneys, as its claim against Defendant Lockheed Martin Corporation ("Lockheed Martin"), alleges as follows:

**INTRODUCTION**

1.       Securitas brings this action seeking to collect amounts due in excess of $5 million from Lockheed Martin to Securitas.

2.       Securitas is owed this money as a consequence of Lockheed Martin's termination for convenience of an agreement with Securitas and as a consequence of Lockheed Martin's inducing Securitas to undertake great time and expense based upon Lockheed Martin's promises, representations, and other statements or omissions, to prepare to perform and to later perform the contracted services.

3. Consequently, as stated more fully below, Securitas raises claims of breach of express contract, breach of the implied covenant of good faith and fair dealing, quantum meruit/unjust enrichment and promissory estoppel.

## THE PARTIES

4. Securitas Security Services USA, Inc., the plaintiff, is a Delaware corporation with its principal place of business and headquarters in Parsippany, New Jersey.

5. Lockheed Martin is a Maryland corporation with its principal place of business and headquarters in Bethesda, MD.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. §1332, as it is an action between citizens of different states and the matter in controversy exceeds $75,000.00 exclusive of interests and costs.

7. This Court also has jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

8. Venue is appropriate under 28 U.S.C. §1391.

## FACTS COMMON TO ALL COUNTS

9. Lockheed Martin had a contract to supply certain goods and services to the United States armed services.

10. The total contract price for that contract was in excess of $35 million.

2

11.    As part of that contract, Lockheed Martin was to supply trained explosive detection dogs ("EDD") and handlers/trainers to the United States armed services at numerous locations including some within the state of New Jersey.

12.    Lockheed Martin subcontracted with Securitas to provide the EDD and handlers/trainers.

13.    The relevant contractual documents included a provision noting that the arrangement would be governed by the law of the state from which Lockheed Martin issued the contract.

14.    On January 6, 2009 that contract issued from Lockheed Martin in Cherry Hill, New Jersey, as seen in Exhibit A.

15.    It was estimated by the contracting parties that at least EDDs would be provided under the contract and that each such EDD would be teamed with a respective handler/trainer to work; collective the teams would work approximately 1500 hours per week performing the designated services at the designated sites.

16.    In reasonable reliance on the promised compensation and with the express approval of Lockheed Martin, Securitas undertook to obtain trained EDDs and to contract with handlers and trainers to prepare to perform, and later perform, the work required under the subcontract.

17.    Securitas undertook such efforts and such start-up costs with the knowledge of, and at the request of, Lockheed Martin, and were induced by Lockheed Martin to do so.

3

18.     Such undertakings were at the time and expense of Securitas, which understood it would be compensated and reimbursed by Lockheed Martin for such efforts, as Lockheed Martin also agreed.

19.     Though some of these start-up costs were to be reimbursed through deferred payments over the life of the contract, Securitas' right to reimbursement was to accelerate upon any earlier termination of the agreement.

20.     These agreements were confirmed, ratified and reflected in April 2009 when the purchase orders were issued by Lockheed Martin, *see* Exs. B-C.

21.     The total price of the Lockheed Martin subcontract with Securitas was for no less than $5.5 million.

22.     Thereafter, Securitas tendered performance.

23.     Lockheed Martin accepted such performance, understanding that Securitas had a reasonable expectation of being compensated and reimbursed for the services that Securitas performed and for the expenses Securitas incurred in preparing to perform and continuing to perform.

24.     Later, on or about July 16, 2009, Lockheed Martin provided Securitas notice that Lockheed Martin was terminating the contract for convenience.

25.     Under the contract, Lockheed Martin was obligated, following notice of termination for convenience, to compensate Securitas for "all completed and partially completed deliverables

4

and services…at the agreed upon prices" and for "the actual, allowable and reasonable expenses incurred" by Securitas "for Work in process up to and including the date of termination." Ex. D.

26.     Under the contract, Securitas was to provide Lockheed Martin with an itemization of such amounts due and owing so that Lockheed Martin could remit the proper amounts to Securitas.

27.     Thereafter, Securitas provided such itemization, which totaled $5,148,921.78. (Ex. E).

28.     Lockheed Martin, in breach of its contractual obligations to make payment after a termination for convenience, refused to pay Securitas the required amounts.

29.     Lockheed Martin retained the benefit of Securitas' performance while refusing to compensate and reimburse Securitas

30.     Lockheed Martin retained the benefit of Securitas' performance, which was provided in reasonable reliance on Lockheed Martin's promises and representations.

<u>**COUNT ONE**</u>
**(Breach of Agreement)**

31.     Securitas repeats and incorporates herein by reference the allegations contained in the preceding Paragraphs of this complaint as if set forth at length here.

32.     The terms of the Agreement between Securitas and Lockheed Martin required and mandated that Lockheed Martin pay to Securitas the amounts due and demanded.

33.     To date, Lockheed Martin has not remitted the full amount due.

FIRM:25538995v3

34.    An amount no less than $5,148,921.78 exclusive of costs and interests remains due from Lockheed Martin to Securitas.

35.    Securitas fully performed all of its obligations under the parties' Agreement.

36.    Lockheed Martin has not paid Securitas the amounts due and has not otherwise fulfilled its performance obligations.

37.    Despite demands for payment, Lockheed Martin has improperly and wrongfully failed to pay the outstanding amounts due and owing to Securitas.

38.    By failing to pay Securitas for the value of the services rendered in accordance with the terms of the parties' Agreement, Lockheed Martin materially breached the Agreement.

39.    As a direct and proximate result, Securitas has been damaged in an amount to be shown at trial, plus pre-judgment interest on the outstanding amount plus costs under the Agreement.

## COUNT TWO
### (Breach of Good Faith and Fair Dealing)

40.    Securitas repeats and incorporates herein by reference the allegations contained in the preceding Paragraphs of this complaint as if set forth at length here.

41.    The Agreement between Securitas and Lockheed Martin contains an implied covenant by both parties to act in good faith and deal fairly with each other, and that neither party take or fail to take any action that would deprive the other of the reasonably anticipated fruits such party would enjoy under the agreement.

6

42.    By refusing to fairly and reasonably compensate Securitas, Lockheed Martin has violated, and continues to violate, the Agreement's implied covenant of good faith and fair dealing and deprive Securitas improperly of the anticipated fruits of his agreement.

43.    Lockheed Martin's breach of the implied covenant of good faith and fair dealing has caused, and will continue to cause, Securitas to suffer substantial monetary damages, in an amount to be determined at hearing.

**COUNT THREE**

**(Quantum Meruit/Unjust Enrichment)**

44.    Securitas repeats and incorporates herein by reference the allegations contained in the preceding Paragraphs of this complaint as if set forth at length here.

45.    Securitas performed professional services for Lockheed Martin in good faith in connection with its contractual duties.

46.    At the time the services were rendered by Securitas, and accepted by Lockheed Martin, Securitas had the intent and reasonable expectation that Lockheed Martin would compensate Securitas for the services rendered at and appropriate and reasonable level in light of Securitas' performance.

47.    Lockheed Martin understood, acknowledged and induced Securitas' expectations.

48.    To the extent that Lockheed Martin argues or asserts that the agreement between the parties did not reflect a contractual arrangement specifically requiring the payments that Securitas demands, Securitas is entitled to recovery quantum meruit.

7

49.     The amounts demanded by Securitas are a reasonable and customary amount in this industry for Securitas' performance and other undertakings.

50.     Despite Securitas's demand for payment, Lockheed Martin has refused to pay the demanded amount.

51.     Lockheed Martin's failure to pay the outstanding amount while retaining the benefit of Securitas's services and performance without fully compensating Securitas would be unjust.

52.     Equity and good conscience dictate that Lockheed Martin should be compelled to pay the demanded amount to Securitas.

53.     Securitas may not have an adequate remedy at law against Lockheed Martin.

## COUNT FOUR

### (Promissory Estoppel)

54.     Securitas repeats and incorporates herein by reference the allegations contained in the preceding Paragraphs of this complaint as if set forth at length here.

55.     The commitment to pay Securitas was a promise by and on behalf of Lockheed Martin.

56.     Such promises and representations were made to induce, and did in fact induce, acceptance of Lockheed Martin's offer to Securitas to perform as a subcontractor.

57.     Securitas reasonably relied upon said promises to its detriment, and reasonably relied on such terms in incurring the substantial investment costs associated with entering into, preparing to perform, and performing the contract between Securitas and Lockheed Martin.

8

58.     Securitas provided Lockheed Martin with all the benefits offered in exchange for said promise and fully performed.

59.     The interests of justice require that Lockheed Martin be estopped from denying said promise and failing to perform pursuant to its terms.

**WHEREFORE**, Securitas demands judgment in his favor and against Lockheed Martin, including but not limited to awarding:

a)      damages in an amount proven at trial;

b)      pre-judgment interest on the outstanding amount;

c)      Securitas its costs in bringing this action;

d)      such other relief as the Court deems necessary and appropriate.

<u>**JURYY DEMAND**</u>

Plaintiff demands a trial by jury.

Dated:  November 24, 2014

EPSTEIN BECKER & GREEN, P.C.

James P. Flynn
One Gateway Center
Newark, NJ 07102
Tel: 973.642.1900
jflynn@ebglaw.com
Attorneys for Plaintiff
   Securitas Security Services USA, Inc.

9

## CERTIFICATION UNDER L.CIV.R 11.2

This matter in controversy is not the subject of another action pending in any court, or any other pending arbitration or administrative hearing.

James P. Flynn

DATED:  November 24, 2014

FIRM:25538995v3

## CERTIFICATION UNDER L.CIV.R 201(d)(3)

This matter in controversy in this matter is in excess of $150,000.00 exclusive of interests and costs and therefore should not be subject to arbitration under the Court's Local Civil Rules.

_____
James P. Flynn

DATED:  November 24, 2014

FIRM:25538995v3

# EXHIBIT A



Lockheed Martin Information & Technology Services
2339 Route 70 West Cherry Hill, NJ 08002-3315

**LOCKHEED MARTIN**

Company
SECURITAS SECURITY SVCS USA, INC
500 NORTH PULASKI STREET
CHICAGO IL 60624

Page
1/    8

**YOUR VENDOR NUMBER WITH US:**
LM0576407

**Value Contract**

Contract number/date
46033116 / 01/06/2009

VENDOR CONTACT / FAX
Bob Pastene / 773-826-0800

**Please deliver to:**
LOCKHEED MARTIN SERVICES INC
500 WOODLAKE DRIVE
CHESAPEAKE VA 23320

·VALID FROM:        01/06/2009
VALID TO:          09/30/2013

TO FACILITATE PAYMENT FOR AN ORDER, ALL PACKING SLIPS AND INVOICE MUST
REFERENCE PO NUMBER, MATERIAL NUMBER AND LINE NUMBER.
ALL INVOICES ARE TO BE ·SUBMITTED TO:

**Deliv. terms:** FOB **DESTINATION**

**PAYMENT TERMS:** NET 60
Target value        35,600,752.00 USD                    **CURRENCY:** USD

**Header text**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
THIS· VALUE CONTRACT(VC) SUPERSEDES VC 46032952 IN ITS ENTIRETY
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Lockheed Martin Information & Technology Services
2339 Route 70 West  Cherry Hill, NJ 08002-3315

**LOCKHEED MARTIN**

Company
SECURITAS SECURITY SVCS USA, INC
500 NORTH PULASKI STREET
CHICAGO IL  60624

| Contract number/date | Page | |
|---|---|---|
| 46033116 / 01/06/2009 | 2/ | 8 |

## 1.0  AGREEMENT:
-----------------
This Agreement/Contract No. 46032952 supersedes in its entirety
the Value Contract 46032952 executed March 26, 2009 and the Letter
Contract executed between the parties dated February 25, 2009. Any
action taken in accordance with the authorization previously contained
in that Value Contract and Letter Contract shall be considered as an
action taken in performance of this Agreement/Contract. This
Agreement/Contract integrates, merges, and supersedes any prior offers,
negotiations, and any other agreements concerning the subject matter
hereof and constitutes the entire agreement between the parties."

## 2.0  POINTS OF CONTACT:
-----------------------
2.1 Contractual:
Airais McCoy, (757)578-3409, airais.mccoy@lmco.com
2.2 Technical:
Jim Wetherington,(703)346-1438, jim.wetherington@lmco.com
2.3 Invoicing:
Pam Zanzig, (757)578-3340, pam.zanzig@lmco.com

## 3.0  CONTRACT TYPE:
--------------------
This is an Indefinite Delivery, Indefinite Quantity (IDIQ) Value
Subcontract Agreement in support of the A76 Non-Guard Security Support
Services Prime Contract #N00189-08-D-Z003.

Unless otherwise stated on the PO Release each Task Order will be Firm
Fixed Price (FFP).

## 4.0 SCOPE OF WORK:
-------------------
The Subcontractor, in the capacity of an independent subcontractor, and
not as an agent of Lockheed Martin, shall provide, in accordance with
the terms and conditions set forth herein, the personnel, services,
materials, equipment, and facilities (collectively referred to as
"Work") necessary for the proper accomplishment of the tasks specified
in the attached Statement of Work (SOW).

## 5.0  PLACE AND PERIOD OF PERFORMANCE:
---------------------------------------

5.1 Period of Performance:
06 January 2009 through 01 November 2012 (represents the base year and
all option periods of the prime contract contingent on Lockheed Martin
release awards)
5.2 Place of Performance:
As identified in each Purchase Order Release

Lockheed Martin Information & Technology Services
2339 Route 70 West  Cherry Hill, NJ 08002-3315

**LOCKHEED MARTIN**

Company
SECURITAS SECURITY SVCS USA, INC
500 NORTH PULASKI STREET
CHICAGO IL  60624

Contract number/date                        Page
46033116 / 01/06/2009                    3/   8

**6.0 FUNDING:**
-------------
No funds are obligated by this Value Contract and no contractual
obligation to order from Seller shall exist until the placement of a
Purchase Order Release.

This Subcontract will be incrementally funded by Lockheed Martin.  Of
the total estimated not-to-exceed value of this Subcontract,
$35,600,752,  the sum of $2,000,000 is presently available for payment
and allotted to this Subcontract, including termination liability.  Any
expenditures or obligations incurred by the SELLER in excess of said
amount in the performance hereunder shall be at the SELLER's own risk.
It is anticipated that from time to time additional funds will be
allotted to this Subcontract until the total price of the contract
items is allotted.  The period of performance estimated to be covered
by the allotted amount specified above is through August 6, 2012.

Depending on applicability, each task order or period of performance
will be funded separately under a Delivery Order PO release from this
value subcontract.  Each PO release will reference this value
subcontract, and the terms and conditions herein will apply to each
release.  The minimum amount to be awarded under this IDIQ Value
Subcontract is $0.

**7.0 TERMS & CONDITIONS:**
-----------------------
All Purchase Order Releases, including electronic orders/releases,
placed under this Value Contract shall be governed by the terms &
conditions listed below. Lockheed Martin reserves the right to add
terms and conditions to Purchase Orders Releases.
7.1 Lockheed Martin CorpDoc 2 (01/08)
7.2 Lockheed Martin CorpDoc 2A dated (01/08)
7.3 Lockheed Martin CorpDoc 2SER dated (01/08)
7.4 Supplement C dated (02/06)
7.5 Prime Contract Clauses for Subcontractors

**8.0 ATTACHMENTS:**
-----------------
All Purchase Order Releases, including electronic orders/releases,
placed under this Value Contract shall be governed by the attachments
listed below. Lockheed Martin reserves the right to add attachments to
Purchase Orders Releases.
8.1 Statement of Work (SOW):
A76 Non-Guard Security Support Services, Revised N69450-07-R-0554 EDD
Requirements dated August 10, 2008.
8.2 PWS for EDD 3 25 2009.doc



Lockheed Martin Information & Technology Services
2339 Route 70 West  Cherry Hill, NJ 08002-3315

*LOCKHEED MARTIN*

Company
SECURITAS SECURITY SVCS USA, INC
500 NORTH PULASKI STREET
CHICAGO IL  60624

Contract number/date          Page
46033116 / 01/06/2009         4/   8

8.3 Wage Determinations:

| Number | Revision | Date | Location | |
|--------|----------|------|----------|--|
| 2005-2043 | 3 | 11/29/2006 | CA, | BAKERSFIELD |
| 2005-2044 | 3 | 11/29/2006 | CA, | BAKERSFIELD |
| 2005-2047 | 2 | 11/29/2006 | CA, | LOS ANGELES/SANTA ANA |
| 2005-2048 | 3 | 11/29/2006 | CA, | LOS ANGELES/SANTA ANA |
| 2005-2049 | 2 | 12/15/2006 | CA, | MONTEREY |
| 2005-2050 | 3 | 12/08/2006 | CA, | MONTEREY |
| 2005-2053 | 3 | 11/29/2006 | CA, | RIVERSIDE |
| 2005-2054 | 2 | 11/29/2006 | CA, | RIVERSIDE |
| 2005-2057 | 3 | 03/21/2007 | CA, | SAN DIEGO |
| 2005-2057 | 3 | 03/21/2007 | CA, | SAN DIEGO |
| 2005-2058 | 4 | 03/21/2007 | CA, | SAN DIEGO |
| 2005-2071 | 2 | 11/29/2006 | CA, | VENTURA |
| 2005-2072 | 3 | 11/29/2006 | CA, | VENTURA |
| 2005-2073 | 3 | 12/11/2006 | CA, | VISALIA |
| 2005-2074 | 4 | 02/09/2007 | CA, | VISALIA |
| 2005-3023 | 2 | 12/19/2006 | CT, | NEW LONDON |
| 2005-3024 | 3 | 12/19/2006 | CT, | NEW LONDON |
| 2005-2103 | 2 | 11/07/2006 | DC, | DISTRICT-WIDE |
| 2005-2104 | 3 | 11/07/2006 | DC, | DISTRICT-WIDE |
| 2005-2095 | 2 | 11/03/2006 | DE, | LOWER EASTERN SHORE |
| 2005-2096 | 3 | 11/03/2006 | DE, | LOWER EASTERN SHORE |
| 2005-3007 | 2 | 12/19/2006 | FL, | BAY |
| 2005-3008 | 3 | 11/22/2006 | FL, | BAY |
| 2005-3033 | 2 | 09/25/2006 | FL, | ESCAMBIA, OKALOOSA, SANTA ROSA |
| 2005-3034 | 4 | 11/02/2006 | FL, | ESCAMBIA, OKALOOSA, SANTA ROSA |
| 2005-2115 | 3 | 03/21/2007 | FL, | JACKSONVILLE |
| 2005-2116 | 4 | 03/21/2007 | FL, | JACKSONVILLE |
| 2005-2119 | 3 | 11/06/2006 | FL, | MIAMI |
| 2005-2120 | 3 | 11/06/2006 | FL, | MIAMI |
| 2005-2123 | 2 | 12/15/2006 | FL, | ORLANDO |
| 2005-2124 | 4 | 12/15/2006 | FL, | ORLANDO |
| 2005-2133 | 1 | 09/01/2006 | GA, | ATLANTA |
| 2005-2134 | 3 | 10/05/2006 | GA, | ATLANTA |
| 2005-2147 | 2 | 12/15/2006 | GU, | ISLAND-WIDE |
| 2005-2148 | 3 | 12/15/2006 | GU, | ISLAND-WIDE |
| 2005-2153 | 4 | 12/15/2006 | HI, | ISLAND-WIDE |
| 2005-2154 | 6 | 01/29/2007 | HI, | ISLAND-WIDE |
| 2005-2167 | 1 | 09/21/2006 | IL, | CHICAGO |
| 2005-2168 | 2 | 02/09/2007 | IL, | CHICAGO |
| 2005-2183 | 2 | 11/03/2006 | IN, | BLOOMINGTON |
| 2005-2184 | 3 | 12/15/2006 | IN, | BLOOMINGTON |
| 2005-2233 | 3 | 03/21/2007 | LA, | NEW ORLEANS |
| 2005-2234 | 4 | 12/19/2006 | LA, | NEW ORLEANS |

Lockheed Martin Information & Technology Services
2339 Route 70 West  Cherry Hill, NJ 08002-3315

**LOCKHEED MARTIN**

Company
SECURITAS SECURITY SVCS USA, INC
500 NORTH PULASKI STREET
CHICAGO IL  60624

Contract number/date
46033116 / 01/06/2009

Page
5/ 8

| 2005-2247 | 2 | 11/20/2006 | MD, BALTIMORE |
| 2005-2248 | 3 | 11/20/2006 | MD, BALTIMORE |
| 2005-2241 | 2 | 12/19/2006 | ME, STATEWIDE |
| 2005-2242 | 4 | 12/19/2006 | ME, STATEWIDE |
| 2005-2299 | 2 | 12/01/2006 | MS, MERIDIAN |
| 2005-2300 | 3 | 12/01/2006 | MS, MERIDIAN |
| 2005-2301 | 3 | 02/14/2007 | MS, PASCAGOULA |
| 2005-2302 | 3 | 02/14/2007 | MS, PASCAGOULA |
| 2005-2351 | 1 | 09/18/2006 | NJ, MONMOUTH |
| 2005-2352 | 1 | 09/18/2006 | NJ, MONMOUTH |
| 2005-2333 | 3 | 03/21/2007 | NV, RENO |
| 2005-2334 | 4 | 03/21/2007 | NV, RENO |
| 2005-2447 | 2 | 11/21/2006 | PA, HARRISBURG |
| 2005-2448 | 3 | 11/21/2006 | PA, HARRISBURG |
| 2005-2449 | 2 | 10/26/2006 | PA, PHILADELPHIA |
| 2005-2450 | 3 | 12/19/2006 | PA, PHILADELPHIA |
| 2005-2467 | 2 | 11/22/2006 | RI, STATEWIDE |
| 2005-2468 | 3 | 11/22/2006 | RI, STATEWIDE |
| 2005-2473 | 3 | 12/01/2006 | SC, CHARLESTON |
| 2005-2474 | 4 | 12/01/2006 | SC, CHARLESTON |
| 2005-2495 | 4 | 02/26/2007 | TN, MEMPHIS |
| 2005-2496 | 3 | 11/22/2006 | TN, MEMPHIS |
| 2005-2507 | 2 | 12/06/2006 | TX, CORPUS CHRISTI |
| 2005-2508 | 3 | 12/06/2006 | TX, CORPUS CHRISTI |
| 2005-2513 | 2 | 12/19/2006 | TX, FORT WORTH |
| 2005-2514 | 3 | 12/19/2006 | TX, FORT WORTH |
| 2005-2095 | 2 | 11/03/2006 | VA, ACCOMACK |
| 2005-2096 | 3 | 11/03/2006 | VA, ACCOMACK |
| 2005-2543 | 2 | 02/15/2007 | VA, NORFOLK |
| 2005-2544 | 3 | 02/15/2007 | VA, NORFOLK |
| 2005-2559 | 2 | 09/14/2006 | WA, BREMERTON |
| 2005-2560 | 4 | 02/16/2007 | WA, BREMERTON |
| 2005-2561 | 2 | 12/19/2006 | WA, ISLAND COUNTY |
| 2005-2562 | 3 | 12/19/2006 | WA, ISLAND COUNTY |
| 2005-2563 | 2 | 12/19/2006 | WA, SEATTLE |
| 2005-2564 | 3 | 12/19/2006 | WA, SEATTLE |

9.0 MODIFICATIONS:
--------------------
Modifications to this Value Contract or any subsequent Purchase Order
Release can only be authorized in writing by Lockheed Martin
Procurement. Lockheed Martin will not be responsible for work
performed outside the Statement of Work, in excess of authorized
funding or beyond the period of performance.

10.0 PAYMENTS:
---------------

**Lockheed Martin Information & Technology Services**
2339 Route 70 West  Cherry Hill, NJ 08002-3315

**LOCKHEED MARTIN**

Company
SECURITAS SECURITY SVCS USA, INC
500 NORTH PULASKI STREET
CHICAGO IL  60624

| Contract number/date | Page | |
|---|---|---|
| 46033116 / 01/06/2009 | 6/ | 8 |

Lockheed Martin has implemented an invoicing system known as VIP for
invoicing, cost control and subcontract management. Both labor and
other direct charges will be billed through the VIP system.

The Subcontractor agrees to perform time keeping under this Subcontract
under the Lockheed Martin Vendor Invoice Process (VIP) system. The
subcontractor agrees to provide all information and data necessary to
identify employees that will enter their time in VIP, and all relevant
data necessary to set up the VIP account number.

VIP account set up and other administrative requirements will be
coordinated between the Subcontractor's representative and the Lockheed
Martin VIP Point of Contact (POC).

The Lockheed Martin VIP Point of Contact is:
Ms. Pam Zanzig
pam.zanzig@lmco.com
757-578-3340

11.0 INSURANCE:
----------------
Vendor is responsible for maintaining current general liability,
workers compensation and employer's liability, and automobile liability
insurance throughout the period of performance of this Value Contract.
Vendor is also responsible for providing Lockheed Martin with current
certification of such insurance naming Lockheed Martin both certificate
holder and additional insured.

12.0 IMPORT/EXPORT:
-------------------
If applicable to this specific effort, the subcontractor is required to
comply with all export rules and regulations.  If applicable to this
specific effort, each Party acknowledges that this agreement is subject
in all respects to the laws and regulations of the United States,
including the Export Administration Act of 1979 (50 U.S.C. App 2401, et
seq.), as amended, and the Export Control Act (22 U.S.C. 2778), as
amended, and all regulations there under, including the International
Traffic in Arms Regulations (22 C.F.R. 120-130), as amended, and Export
Administration Regulations (15 C.F.R. 730-774), as amended.  The
Parties acknowledge that information and technology resulting from the
performance of this agreement may be subject to export control laws and
regulations and that each Party is responsible for compliance with such
laws and regulations.  If a Party or its contractor(s) discloses
technical data subject to U.S. export laws and regulations to

Lockheed Martin Information & Technology Services
2339 Route 70 West  Cherry Hill, NJ 08002-3315

**LOCKHEED MARTIN** 

Company
SECURITAS SECURITY SVCS USA, INC
500 NORTH PULASKI STREET
CHICAGO IL   60624

| Contract number/date | Page | |
|---|---|---|
| 46033116 / 01/06/2009 | 7/ | 8 |

the other Party under this Agreement, the receiving Party agrees that
such technical data will not be provided to foreign persons, as defined
in 22 C.F.R. 120.16, or be shipped or transmitted outside the United
States without proper U.S.

Government authorization, where required, regardless of whether the
data is marked or identified by a legend.  The parties acknowledge that
foreign persons employed by or associated with, or under contract to
the receiving Party may not be in receipt of export controlled
information without proper U.S. Government authorization.  The
receiving Party further agrees to notify Lockheed Martin in the event
they intend to share information disclosed hereunder with any employee
who is a foreign person prior to commencement of that person's work
under the subject agreement.  The receiving Party shall indemnify and
hold the disclosing Party harmless from all claims, demands, damages,
costs, fines, penalties, attorneys' fees, and all other expenses
arising from failure of the receiving Party to comply with this clause
or applicable U.S. export control laws and regulations.

Lockheed Martin has joined with the U.S. Customs Service in the
Customs-Trade Partnership Against Terrorism (C-TPAT) program.  This
program is designed to protect the supply chain from the introduction
of terrorist contraband (weapons, explosives, biological, nuclear or
chemical agents, etc.) in shipments to Lockheed Martin, drop-shipments
to its sub-tier suppliers, or drop-shipments to its customers
originating from off-shore of the United States.  Suppliers are advised
that shipments through U.S. Importers, from manufacturers in foreign
countries, and brokers/freight forwarders/carriers must be with
transportation companies that are C-TPAT validated by the U.S. Customs
Service.

| Item | Material<br>Tgt. qty. | Unit | Description<br>Price per unit | Net value |
|---|---|---|---|---|
| 00001 | DOG HANDLING SERVICES | | | |
| | 1 | Perf. unit | | |

The item covers the following services:
10                                DOG HANDLING SERVICES
            1 PU

*Airais V. McCoy  4-16-09*
Buyer: AIRAIS V. MCCOY
Phone: 757-578-3409
Fax:   757-366-3340

Acknowledgement: _____
Title: _____
Date: _____

Lockheed Martin Information & Technology Services
2339 Route 70 West  Cherry Hill, NJ 08002-3315



Company
SECURITAS SECURITY SVCS USA, INC
500 NORTH PULASKI STREET
CHICAGO IL  60624

Contract number/date     Page
46033116 / 01/06/2009     8/   8

Certificate of Conformance #_____     Accepted by _____
Rejected by _____

# EXHIBIT B

Lockheed Martin Information & Technology Services
2339 Route 70 West  Cherry Hill, NJ 08002-3315

 **LOCKHEED MARTIN**

Company
SECURITAS SECURITY SVCS USA, INC
500 NORTH PULASKI STREET
CHICAGO IL  60624

**Page**
1/   6

| **Changed Purchase Order** | **001  04/07/2009** |
|---|---|

PO number/date
7200004835 / 03/31/2009

VENDOR CONTACT / FAX
Bob Pastene / 773-826-0800

**YOUR VENDOR NUMBER WITH US:**
LM0576407

**Please deliver to:**
LOCKHEED MARTIN SERVICES INC
500 WOODLAKE DRIVE
CHESAPEAKE VA  23320

VALID FROM:          04/01/2009
VALID TO:            09/30/2009

TO FACILITATE PAYMENT FOR AN ORDER, ALL PACKING SLIPS AND INVOICE MUST
REFERENCE PO NUMBER, MATERIAL NUMBER AND LINE NUMBER.
ALL INVOICES ARE TO BE SUBMITTED TO:

**Deliv. terms:** FOB **DESTINATION**

**PAYMENT TERMS:** NET 60                                    **CURRENCY:** USD

**Header text**
Change 001:

● Increases L00050 Navy Region Southwest by $38,771.20 from
$681,344.44 to $720,112.64
● Purchase order increased by $38,771.20 from $3,492,636.16 to
$3,531,407.36
● All other terms and conditions of the purchase order remain the
same.

Airais McCoy / Staff Subcontract Administrator / April 07, 2009
-----------------------------------------------------------------

Please do not send paper invoices.  This is a VIP purchase order as
outlined in Value contract 46032952.

Lockheed Martin Information & Technology Services
2339 Route 70 West  Cherry Hill, NJ 08002-3315



**LOCKHEED MARTIN**

Company
SECURITAS SECURITY SVCS USA, INC
500 NORTH PULASKI STREET
CHICAGO IL  60624

PO number/date                    Page
7200004835 / 03/31/2009     2/     6

This order is being issued on a firm fixed price basis to Securitas
Security Svcs USA, Inc to perform the requirements of the statement of
work, PWS for EDD 3 25 2009.doc, dated in support of Lockheed Martin
Task.

Lockheed Martin will not be responsible for work performed outside the
scope of work identified in the Performance Work Statement, past the
period of performance, in excess of your proposal ceiling price or in
excess of the authorized funding (whichever occurs first) unless first
authorized by procurement in the form of a written change to this
contract.

The current authorized funding ceiling is $3,492,636.16 which Securitas
Security Svcs USA, Inc is not to exceed without prior authorization in
writing from Lockheed Martin procurement.  Any deferred amount is
subject to the availability of funds.

Securitas Security Svcs USA, Inc shall notify Lockheed Martin in
writing when 75% of the authorized funding has been expended.

If you do not have an approved accounting system, please provide
written certification from your company's CPA that you cost
accumulation system is adequate to track costs in accordance with FAR
30.  Supporting documentation will be required with all invoices, i.e.
timecards, time logs, or labor certifications signed by controller.

***Any special invoicing requirements *** Payment terms are predicted
and calculated upon receipt and entry of an accurate and complete
Lockheed Martin approved invoice.

Cost Accounting Standards (CAS) FAR Clauses 52.230-2 and 52.230-6
apply.  Where CAS does apply, LMSI will require a CAS Disclosure
Statement, Certificate of Current Cost, or other than certified cost
and pricing data.

Securitas Security Svcs USA, Inc) is responsible for providing Lockheed
Martin with current general liability and workers compensation
insurance certificate throughout the period of performance of this task
order/purchase order.  If subcontractor is performing an effort OCONUS
FAR 52.288-03 (Defense Base Act) insurance will be required.  It is the
sole responsibility of the subcontractor to provide all referenced
certificates to Lockheed Martin procurement prior to performance.

If applicable to this specific effort, the subcontractor is required to
comply with all export rules and regulations.

Lockheed Martin Information & Technology Services
2339 Route 70 West  Cherry Hill, NJ 08002-3315

**LOCKHEED MARTIN**

Company
SECURITAS SECURITY SVCS USA, INC
500 NORTH PULASKI STREET
CHICAGO IL   60624

| PO number/date | | Page | |
| 7200004835 / 03/31/2009 | | 3/ | 6 |

If applicable to this specific effort, each Party acknowledges that
this agreement is subject in all respects to the laws and regulations
of the United States, including the Export Administration Act of 1979
(50 U.S.C. App 2401, et seq.), as amended, and the Export Control Act
(22 U.S.C. 2778), as amended, and all regulations there under,
including the International Traffic in Arms Regulations (22 C.F.R.
120-130), as amended, and Export Administration Regulations (15 C.F.R.
730-774), as amended.  The Parties acknowledge that information and
technology resulting from the performance of this agreement may be
subject to export control laws and regulations and that each Party is
responsible for compliance with such laws and regulations.  If a Party
or its contractor(s) discloses technical data subject to U.S. export
laws and regulations to the other Party under this Agreement, the
receiving Party agrees that such technical data will not be provided to
foreign persons, as defined in 22 C.F.R. 120.16, or be shipped or
transmitted outside the United States without proper U.S. Government
authorization, where required, regardless of whether the data is marked
or identified by a legend.  The parties acknowledge that foreign
persons employed by or associated with, or under contract to the
receiving Party may not be in receipt of export controlled information
without proper U.S. Government authorization.  The receiving Party
further agrees to notify Lockheed Martin in the event they intend to
share information disclosed hereunder with any employee who is a
foreign person prior to commencement of that person's work under the
subject agreement.  The receiving Party shall indemnify and hold the
disclosing Party harmless from all claims, demands, damages, costs,
fines, penalties, attorneys' fees, and all other expenses arising from
failure of the receiving Party to comply with this clause or applicable
U.S. export control laws and regulations.

Lockheed Martin has joined with the U.S. Customs Service in the
Customs-Trade Partnership Against Terrorism (C-TPAT) program.  This
program is designed to protect the supply chain from the introduction
of terrorist contraband (weapons, explosives, biological, nuclear or
chemical agents, etc.) in shipments to Lockheed Martin, drop-shipments
to its sub-tier suppliers, or drop-shipments to its customers
originating from off-shore of the United States.  Suppliers are advised
that shipments through U.S. Importers, from manufacturers in foreign
countries, and brokers/freight forwarders/carriers must be with
transportation companies that are C-TPAT validated by the U.S. Customs
Service.  Contact the Lockheed Martin Procurement Representative
identified in the solicitation for assistance in identifying
transportation companies that are validated under the C-TPAT program.

Lockheed Martin Information & Technology Services
2339 Route 70 West  Cherry Hill, NJ 08002-3315

 **LOCKHEED MARTIN**

Company
SECURITAS SECURITY SVCS USA, INC
500 NORTH PULASKI STREET
CHICAGO IL  60624

| | | |
|---|---|---|
| PO number/date | | Page |
| 7200004835 / 03/31/2009 | 4/ | 6 |

If actual hours are expected to exceed those proposed for a particular labor category, a revised proposal is required to be submitted to Lockheed Martin.  Lockheed Martin will submit to U.S. Government for approval.  Subcontractor is not authorized to perform additional hours until approval is received and a modification to this purchase order is incorporated.

Sole authority to make changes in or amendments to this Subcontract and to effect deviations from the work herein specified is hereby vested in the authorized representative of LMSI' Subcontract Department and must be made in writing.  Unauthorized changes, alterations or modifications to this Subcontract will not be considered for equitable adjustment. Changes to the Subcontract or its scope shall not be made without the express written authorization of the designated LM IS&GS Subcontract Administrator.  Except as otherwise specifically provided herein, any notices to be furnished by Subcontractor to LMSI, or by LMSI to Subcontractor shall be sent by mail or electronic means as follows:

Contractual Point of Contact:
Airais McCoy
Tel: 757-578-3409     Fax: 757-366-3340
Email: airais.mccoy@lmco.com

Nondiscrimination in employment representation and certification of non-segregated facilities and affirmative action program, certification and disclosure regarding payments of influence certain federal transactions, certification concerning debarment and/or suspension from federal procurement and non-procurement programs, and certification of cost accounting standards per FAR 52.230-2 and cost accounting standards administration per FAR 52.230-6, Statement of Work, Labor Category descriptions and subcontractor hourly rate table is hereby incorporated in this purchase order.

Lockheed Martin terms and conditions CorpDoc 2(01/08, CorpDoc 2A(01/08), CorpDoc 2Ser (01/08), Supplement C and all flow down clauses from Prime Contract N000189-08-D-Z003 is hereby incorporated in this order.

*** Text changed ***

| ITEM | MATERIAL ORDER QTY | DESCRIPTION UNIT | PRICE PER UNIT | NET VALUE |
|---|---|---|---|---|
| 00010 | 1 | NAVY REGION HAWAII | Perf. unit     221,944.32 | 221,944.32 |

Lockheed Martin Information & Technology Services
2339 Route 70 West  Cherry Hill, NJ 08002-3315

**LOCKHEED MARTIN**

Company
SECURITAS SECURITY SVCS USA, INC
500 NORTH PULASKI STREET
CHICAGO IL  60624

| | PO number/date | Page | |
|---|---|---|---|
| | 7200004835 / 03/31/2009 | 5/ | 6 |

| ITEM | MATERIAL | DESCRIPTION | | | |
|---|---|---|---|---|---|
| | ORDER QTY | UNIT | PRICE PER UNIT | NET VALUE | |

Contract Deliv. Date  Day 04/01/2009
Rel. ord. against contract 46032952  Item 00020

| 00020 | NAVY REGION MID ATLANTIC | | | | |
|---|---|---|---|---|---|
| | 1 | Perf. unit | 961,758.72 | 961,758.72 | |

Contract Deliv. Date  Day 04/01/2009
Rel. ord. against contract 46032952  Item 00020

| 00030 | NAVY REGION WASHINGTON DISTRICT | | | | |
|---|---|---|---|---|---|
| | 1 | Perf. unit | 221,944.32 | 221,944.32 | |

Contract Deliv. Date  Day 04/01/2009
Rel. ord. against contract 46032952  Item 00020

| 00040 | NAVY REION NORTHWEST | | | | |
|---|---|---|---|---|---|
| | 1 | Perf. unit | 443,888.64 | 443,888.64 | |

Contract Deliv. Date  Day 04/01/2009
Rel. ord. against contract 46032952  Item 00020

| 00050 | NAVY REGION SOUTHWEST | | | | |
|---|---|---|---|---|---|
| | 1 | Perf. unit | 720,112.64 | 720,112.64 | |

Contract Deliv. Date  Day 04/01/2009
Rel. ord. against contract 46032952  Item 00020

*** Net price changed ***

| 00060 | NAVY REGION SOUTHEAST | | | | |
|---|---|---|---|---|---|
| | 1 | Perf. unit | 813,795.84 | 813,795.84 | |

Contract Deliv. Date  Day 04/01/2009
Rel. ord. against contract 46032952  Item 00020

| 00070 | NAVY REGION GUAM | | | | |
|---|---|---|---|---|---|
| | 1 | Perf. unit | 147,962.88 | 147,962.88 | |

Lockheed Martin Information & Technology Services
2339 Route 70 West  Cherry Hill, NJ 08002-3315

**LOCKHEED MARTIN**

Company
SECURITAS SECURITY SVCS USA, INC
500 NORTH PULASKI STREET
CHICAGO IL  60624

| PO number/date | | Page | |
|---|---|---|---|
| 7200004835 / 03/31/2009 | | 6/ | 6 |

| ITEM | MATERIAL ORDER QTY | DESCRIPTION UNIT | PRICE PER UNIT | NET VALUE |
|---|---|---|---|---|
| | Contract Deliv. Date  Day 04/01/2009 | | | |
| | Rel. ord. against contract 46032952   Item 00020 | | | |

**Total net item value excluding USD tax:**                    3,531,407.36

TOTAL VALUE OF PURCHASE ORDER:INCLUDING ALL CHARGES     3,531,407.36

*Airais McCoy 4.2.09*

Buyer: AIRAIS V. MCCOY          Acknowledgement: _____
Phone: 757-578-3409                       Title: _____
Fax:   757-366-3340                        Date: _____

Certificate of Conformance #_____   Accepted by _____
Rejected by _____

# EXHIBIT C

Lockheed Martin Information & Technology Services
2339 Route 70 West Cherry Hill, NJ 08002-3325

**LOCKHEED MARTIN**

Company
SECURITAS SECURITY SVCS USA, INC
500 NORTH PULASKI STREET
CHICAGO IL   60624

Page
1/   7

PO NUMBER / DATE
7200004909 / 04/16/2009

VENDOR CONTACT / FAX
Bob Pastene / 773-826-0800

YOUR VENDOR NUMBER WITH US:
LM0576407

Please deliver to:                VALID FROM:      04/01/2009
LOCKHEED MARTIN SERVICES INC      VALID TO:        09/30/2009
500 WOODLAKE DRIVE
CHESAPEAKE VA  23320

TO FACILITATE PAYMENT FOR AN ORDER, ALL PACKING SLIPS AND INVOICE MUST
REFERENCE PO NUMBER, MATERIAL NUMBER AND LINE NUMBER.
ALL INVOICES ARE TO BE SUBMITTED TO:

Deliv. terms: FOB DESTINATION

PAYMENT TERMS: NET 60                              CURRENCY: USD

Header text
***********************************************************
***********************************************************
THIS PURCHASE ORDER SUPERSEDES PO# 720004835 IN ITS ENTIRITY
***********************************************************
***********************************************************

Please do not send paper invoices.  This is a VIP purchase order as
outlined in Value contract 4603311f6.

This order is being issued on a firm fixed price basis to Securitas
Security Svcs USA, Inc to perform the requirements of the statement of.
work, PWS for HDD 3 25 2009.doc, dated March 25, 2009 in support of
Lockheed Martin Task.

Lockheed Martin Information & Technology Services
3339 Route 70 West   Cherry Hill, NJ 08002-3315

*LOCKHEED MARTIN*

Company
SECURITAS SECURITY SVCS USA, INC
500 NORTH PULASKI STREET
CHICAGO IL  60624

PO number/date                    Page
7200004909 / 04/16/2009       2/   7

Lockheed Martin will not be responsible for work performed outside the
scope of work identified in the Performance Work Statement, past the
period of performance, in excess of your proposal ceiling price or in
excess of the authorized funding (whichever occurs first) unless first
authorized by procurement in the form of a written change to this
contract.

> The current authorized funding ceiling is $3,531,407.36 which Securitas
> Security Svcs USA, Inc is not to exceed without prior authorization in
> writing from Lockheed Martin procurement.  Any deferred amount is
> subject to the availability of funds.

Securitas Security Svcs USA, Inc shall notify Lockheed Martin in
writing when 75% of the authorized funding has been expended.

If you do not have an approved accounting system, please provide
written certification from your company's CPA that you cost
accumulation system is adequate to track costs in accordance with FAR
30.  Supporting documentation will be required with all invoices, i.e.
timecards, time logs, or labor certifications signed by controller.

***Any special invoicing requirements *** Payment terms are predicted
and calculated upon receipt and entry of an accurate and complete
Lockheed Martin approved invoice.

Cost Accounting Standards (CAS) FAR Clauses 52.230-2 and 52.230-6
apply.  Where CAS does apply, LMSI will require a CAS Disclosure
Statement, Certificate of Current Cost, or other than certified cost
and pricing data.

Securitas Security Svcs USA, Inc) is responsible for providing Lockheed
Martin with current general liability and workers compensation
insurance certificate throughout the period of performance of this task
order/purchase order.  If subcontractor is performing an effort OCONUS,
FAR 52.288-03 (Defense Base Act) insurance will be required.  It is the
sole responsibility of the subcontractor to provide all referenced
certificates to Lockheed Martin procurement prior to performance.

If applicable to this specific effort, the subcontractor is required to
comply with all export rules and regulations.

Lockheed Martin Information & Technology Services
2339 Route 70 West  Cherry Hill, NJ 08002-3316

*LOCKHEED MARTIN*

Company
SECURITAS SECURITY SVCS USA, INC
500 NORTH PULASKI STREET
CHICAGO IL  60624

PO number/date          Page
7200004909 / 04/16/2009   3/   7

If applicable to this specific effort, each Party acknowledges that
this agreement is subject in all respects to the laws and regulations
of the United States, including the Export Administration Act of 1979
(50 U.S.C. App 2401, et seq.), as amended, and the Export Control Act
(22 U.S.C. 2778), as amended, and all regulations there under,
including the International Traffic in Arms Regulations (22 C.F.R.
120-130), as amended, and Export Administration Regulations (15 C.F.R.
730-774), as amended.  The Parties acknowledge that information and
technology resulting from the performance of this agreement may be
subject to export control laws and regulations and that each Party is
responsible for compliance with such laws and regulations.  If a Party
or its contractor(s) discloses technical data subject to U.S. export
laws and regulations to the other Party under this Agreement, the
receiving Party agrees that such technical data will not be provided to
foreign persons, as defined in 22 C.F.R. 120.16, or be shipped or
transmitted outside the United States without proper U.S. Government
authorization, where required, regardless of whether the data is marked
or identified by a legend.  The parties acknowledge that foreign
persons employed by or associated with, or under contract to the
receiving Party may not be in receipt of export controlled information
without proper U.S. Government authorization.  The receiving Party
further agrees to notify Lockheed Martin in the event they intend to
share information disclosed hereunder with any employee who is a
foreign person prior to commencement of that person's work under the
subject agreement.  The receiving Party shall indemnify and hold the
disclosing Party harmless from all claims, demands, damages, costs,
fines, penalties, attorneys' fees, and all other expenses arising from
failure of the receiving Party to comply with this clause or applicable
U.S. export control laws and regulations.

Lockheed Martin has joined with the U.S. Customs Service in the
Customs-Trade Partnership Against Terrorism (C-TPAT) program.  This
program is designed to protect the supply chain from the introduction
of terrorist contraband (weapons, explosives, biological, nuclear or
chemical agents, etc.) in shipments to Lockheed Martin, drop-shipments
to its sub-tier suppliers, or drop-shipments to its customers
originating from off-shore of the United States.  Suppliers are advised
that shipments through U.S. Importers, from manufacturers in foreign
countries, and brokers/freight forwarders/carriers must be with
transportation companies that are C-TPAT validated by the U.S. Customs
Service.  Contact the Lockheed Martin Procurement Representative
identified in the solicitation for assistance in identifying
transportation companies that are validated under the C-TPAT program.

Lockheed Martin Information & Technology Services
2339 Route 70 West Cherry Hill, NJ 08003-3315

**LOCKHEED MARTIN**

Company
SECURITAS SECURITY SVCS USA, INC
500 NORTH PULASKI STREET
CHICAGO IL  60624

PO number/date                     Page
7200004909 / 04/16/2009        4/  7

If actual hours are expected to exceed those proposed for a particular
labor category, a revised proposal is required to be submitted to
Lockheed Martin.  Lockheed Martin will submit to U.S. Government for
approval.  Subcontractor is not authorized to perform additional hours
until approval is received and a modification to this purchase order is
incorporated.

Sole authority to make changes in or amendments to this Subcontract and
to effect deviations from the work herein specified is hereby vested in
the authorized representative of LMSI' Subcontract Department and must
be made in writing.  Unauthorized changes, alterations or modifications
to this Subcontract will not be considered for equitable adjustment.
Changes to the Subcontract or its scope shall not be made without the
express written authorization of the designated LM IS&GS Subcontract
Administrator.  Except as otherwise specifically provided herein, any
notices to be furnished by Subcontractor to LMSI, or by LMSI to
Subcontractor shall be sent by mail or electronic means as follows:

Contractual Point of Contact:
Airais McCoy
Tel: 757-578-3409        Fax: 757-366-3340
Email: airais.mccoy@lmco.com

Nondiscrimination in employment representation and certification of
non-segregated facilities and affirmative action program, certification
and disclosure regarding payments of influence certain federal
transactions, certification concerning debarment and/or suspension from
federal procurement and non-procurement programs, and certification of
cost accounting standards per FAR 52.230-2 and cost accounting
standards administration per FAR 52.230-6, Statement of Work, Labor
Category descriptions and subcontractor hourly rate table is hereby
incorporated in this purchase order.

Lockheed Martin terms and conditions CorpDoc 2(01/08, CorpDoc
2A(01/08), CorpDoc 2Ser (01/08), Supplement C and all flow down clauses
from Prime Contract N000189-08-D-Z003 is hereby incorporated in this
order.

| ITEM | MATERIAL DESCRIPTION | | | |
|------|------|------|------|------|
| | ORDER QTY | UNIT | PRICE PER UNIT | NET VALUE |
| 00010 | NAVY REGION NORTHWEST | | | |
| | 1 | Perf. unit | 443,888.84 | 443,888.84 |
| | Contract Deliv. Date | Day 04/01/2009 | | |

Lockheed Martin Information & Technology Services
2339 Route 70 West Cherry Hill, NJ 08002-3315

**LOCKHEED MARTIN**

Company
SECURITAS SECURITY SVCS USA, INC
500 NORTH PULASKI STREET
CHICAGO IL  60624

| | PO number/date | | Page | |
|---|---|---|---|---|
| | 7200004909 / 04/16/2009 | | 5/ | 7 |

| ITEM | MATERIAL<br>ORDER QTY | DESCRIPTION<br>UNIT | PRICE PER UNIT | NET VALUE |
|---|---|---|---|---|
| | Rel. ord. against contract 46033116  Item 00001 | | | |
| | The item covers the following services: | | | |
| 10 | | NAVY REGION NORTHWEST | | |
| | 443,888.640 PU | 1.00 | | 443,888.64 |
| 00020 | NAVY REGION SOUTHWEST | | | |
| | 1 | Perf. unit | 720,112.64 | 720,112.64 |
| | Contract Deliv. Date  Day 04/01/2009 | | | |
| | Rel. ord. against contract 46033116  Item 00001 | | | |
| | The item covers the following services: | | | |
| 10 | | NAVY REGION SOUTHWEST | | |
| | 720,112.640 PU | 1.00 | | 720,112.64 |
| 00030 | NAVY REGION SOUTHEAST | | | |
| | 1 | Perf. unit | 813,795.84 | 813,795.84 |
| | Contract Deliv. Date  Day 04/01/2009 | | | |
| | Rel. ord. against contract 46033116  Item 00001 | | | |
| | The item covers the following services: | | | |
| 10 | | NAVY REGION SOUTHEAST | | |
| | 813,795.840 PU | 1.00 | | 813,795.84 |
| 00040 | NAVY REGION GUAM | | | |
| | 1 | Perf. unit | 147,962.88 | 147,962.88 |
| | Contract Deliv. Date  Day 04/01/2009 | | | |
| | Rel. ord. against contract 46033116  Item 00001 | | | |
| | The item covers the following services: | | | |
| 10 | | NAVY REGION GUAM | | |
| | 147,962.880 PU | 1.00 | | 147,962.88 |

Lockheed Martin Information & Technology Services
2339 Route 70 West  Cherry Hill, NJ 08002-3315

**LOCKHEED MARTIN**

Company
SECURITAS SECURITY SVCS USA, INC
500 NORTH PULASKI STREET
CHICAGO IL   60624

PO number/date          Page
7200004909 / 04/16/2009    6/   7

| ITEM | MATERIAL DESCRIPTION | | | |
|------|------------|------|------|------|
| | ORDER QTY | UNIT | PRICE PER UNIT | NET VALUE |

00050   NAVY REGION HAWAII
     1          Perf. unit   221,944.32  221,944.32
    Contract Deliv. Date  Day 04/01/2009
    Rel. ord. against contract 46033116  Item 00001

   The item covers the following services:
10              NAVY REGION HAWAII
   221,944.320 PU         1.00          221,944.32

00060    NAVY REGION MID ATLANTIC
     1          Perf. unit   961,758.72  961,758.72
    Contract Deliv. Date  Day 04/01/2009
    Rel. ord. against contract 46033116  Item 00001

   The item covers the following services:
.10             NAVY REGION MID ATLANTIC
   961,758.720 PU         1.00          961,758.72

00070    NAVY REGION WASHINGTON DISTRICT
     1          Perf. unit   221,944.32  221,944.32
    Contract Deliv. Date  Day 04/01/2009
    Rel. ord. against contract 46033116  Item 00001

   The item covers the following services:
10             NAVY REGION WASHINGTON DISTRICT
   221,944.320 PU         1.00          221,944.32

Total net item value excluding USD tax:      3,531,407.36

Lockheed Martin Information & Technology Services
2339 Route 70 West  Cherry Hill, NJ 08002-3315

*LOCKHEED MARTIN*

Company
SECURITAS SECURITY SVCS USA, INC
500 NORTH PULASKI STREET
CHICAGO IL   60624

PO number/date                Page
7200004909 / 04/16/2009      7/  7

*Airais V. McCoy 4.16.09*

Buyer:  AIRAIS V. McCOY
Phone:  757-578-3409
Fax:    757-366-3340

Acknowledgement:
Title:  PRESIDENT
Date:   5/8/09

Certificate of Conformance #_____   Accepted by _____
Rejected by _____

## CONTRACT CLAUSES

CLAUSES – ALL CONTRACT TYPES

1. The following contract clauses are hereby incorporated by reference:

| Clause No. | Title |
|---|---|
| 52.202-1 | Definitions (JUL 2004) |
| 52.203-5 | Covenant Against Contingent Fees (APR 1984) |
| 52.203-7 | Anti-Kickback Procedures (JUL 1995) |
| 52.204-4 | Printing/Copying Double-Sided on Recycled Paper (AUG 2000) |
| 52.223-14 | Toxic Chemical Release Reporting (AUG 2003) |
| 52.225-13 | Restrictions on Certain Foreign Purchases (MAR 2005) |
| 252.225-7031 | Secondary Arab Boycott of Israel (JUN 2005) |
| 252.231-7000 | Supplemental Cost Principles (DEC 1991) |
| | |
| 52.203-3 | Gratuities (APR 1984) |
| 52.203-8 | Cancellation, Rescission, and Recovery of Funds for Illegal or Improper Activity (JAN 1997) |
| 52.203-10 | Price or Fee Adjustment for Illegal or Improper Activity (JAN 1997) |
| 52.203-11 | Certification and Disclosure Regarding Payments to Influence Certain Federal Transactions (SEP 2005) |
| 52.203-12 | Limitation on Payments to Influence Certain Federal Transactions (SEP 2005) |
| 52.204-2 | Security Requirements (AUG 1996) |
| 52.204-7 | Central Contractor Registration (JUL 2006) |
| 52.204-9 | Personal Identity Verification Of Contractor Personnel (NOV 2006) |
| 52.209-6 | Protecting the Government's Interest When Subcontracting with Contractors Debarred, Suspended, or Proposed for Debarment (JAN 2005) |
| | |
| 52.215-2 | Audit and Records - Negotiation (JUN 1999) |
| 52.215-8 | Order of Precedence-Uniform Contract Format (OCT 1997) |
| 52.215-11 | Price Reduction for Defective Cost or Pricing Data-Modifications (OCT 1997) |
| 52.215-13 | Subcontractor Cost or Pricing Data-Modifications (OCT 1997) |
| 52.215-16 | Facilities Capital Cost of Money |
| 52.215-17 | Waiver of Facilities Capital Cost of Money (OCT 1997) |
| 52.215-21 | Requirements for Cost or Pricing Data or Information Other Than Cost or Pricing Data - Modifications (OCT 1997) |
| 52.219-8 | Utilization of Small Business Concerns (MAY 2004) |
| 52.219-9 | Small Business Subcontracting Plan (JAN 2002) |
| 52.219-9 | ALTERNATE II (OCT 2001) |
| 52.219-16 | Liquidated Damages-Subcontracting Plan (JAN 1999) |
| 52.222-3 | Convict Labor (JUN 2003) |
| 52.222-4 | Contract Work Hours and Safety Standards Act - Overtime Compensation (JUL 2005) |
| | |
| 52.222-21 | Prohibition of Segregated Facilities (FEB 1999) |
| 52.222-26 | Equal Opportunity  (APR 2002) |
| 52.222-35 | Affirmative Action for Disabled Veterans and Veterans of the Vietnam Era (DEC 2001) |
| 52.222-36 | Affirmative Action for Workers with Disabilities (JUN 1998) |
| 52.222-37 | Employment Reports on Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (DEC 2001) |
| 52.222-38 | Compliance With Veterans' Employment Reporting Requirements (Dec 2001) |
| 52.222-39 | Notification of Employee Rights Concerning Payment of Union Dues or Fees (DEC2004) |
| 52.223-5 | Pollution Prevention and Right-to-Know Information (AUG 2003) |

| | |
|---|---|
| 52.223-6 | Drug-Free Workplace (MAY 2001) |
| 52.223-10 | Waste Reduction Program (AUG 2000) |
| 52.224-1 | Privacy Act Notification (APR 1984) |
| 52.224-2 | Privacy Act (APR 1984) |
| 52.225-13 | Restrictions on Certain Foreign Purchases (FEB 2006) |
| 52.226-1 | Utilization of Indian Organizations and Indian-Owned Economic Enterprises (JUN 2000) |
| 52.232-17 | Interest (JUN 1996) |
| 52.232-18 | Availability of Funds (APR 1984) |
| 52.232-23 | Assignment of Claims (JAN 1986) |
| 52.232-25 | Prompt Payment (OCT 2003) |
| | (a)(5)(i)30th day |
| | (b)(1) 30th day |
| 52.232-33 | Payment by Electronic Funds Transfer - Central Contractor Registration (OCT 2003) |
| 52.232-36 | Payment by Third Party (MAY 1999) |
| 52.233-1 | Disputes (JUL 2002) |
| 52.233-1 | ALTERNATE I (DEC 1991) |
| 52.239-1 | Privacy or Security Safeguards (AUG 1996) |
| 52.242-13 | Bankruptcy (JUL 1995) |
| 52.245-1 | Property Records (APR 1984) |
| 52.248-1 | Value Engineering (FEB 2000) |
| 52.251-1 | Government Supply Sources (APR 1984) |
| 52.253-1 | Computer Generated Forms (JAN 1991) |
| 252.203-7001 | Prohibition on Persons Convicted of Fraud or Other Defense-Contract-Related Felonies (MAR 1999) |
| 252.203-7002 | Display of DoD Hotline Poster (DEC 1991) |
| 252.204-7003 | Control of Government Personnel Work Product (APR 1992) |
| 252.205-7000 | Provision of Information to Cooperative Agreement Holders (DEC 1991) |
| 252.215-7000 | Pricing Adjustments (DEC 1991) |
| 252.219-7003 | Small Business Subcontracting Plan (DoD Contracts) (APR 2007) |
| 252.222-7005 | Prohibition of Use of Nonimmigrant Aliens - Guam (SEP 1999) |
| 252.223-7002 | Safety Precautions for Ammunition and Explosives (MAY 1994) |
| 252.223-7003 | Change in Place of Performance - Ammunition and Explosives (DEC 1991) |
| 252.223-7006 | Prohibition on Storage and Disposal of Toxic and Hazardous Materials (APR 1993) |
| 252.223-7007 | Safeguarding Sensitive Conventional Arms, Ammunition, and Explosives (SEP 1999) |
| 252.225-7001 | Buy American Act and Balance of Payments Program (JUN 2005) |
| 252.225-7002 | Qualifying Country Sources as Subcontractors (APR 2003) |
| 252.225-7012 | Preference for Certain Domestic Commodities (JUN 2004) |
| 252.226-7001 | Utilization of Indian Organization, Indian-Owned Economic and Native Hawaiian Small Business Concerns (SEP 2004) |
| 252.227-7025 | Limitations on the Use or Disclosure of Government-Furnished Information Marked with Restrictive Legends (JUN 1995) |
| 252.232-7003 | Electronic Submission of Payment Requests (MAR 2007) |
| 252.232-7010 | Levies On Contract Payments (DEC 2006) |
| 252.243-7001 | Pricing of Contract Modifications (DEC 1991) |
| 252.244-7000 | Subcontracts for Commercial Items and Commercial Components (DOD Contracts)(NOV 2005) |
| 252.245-7001 | Reports of Government Property (MAY 1994) |
| 252.246-7000 | Material Inspection and Receiving Report (MAR 2003) |

## CLAUSES - FIXED-PRICE SERVICE

The following contract clauses are hereby incorporated by reference:

| Clause No | Title |
|-----------|-------|
| 52.203-6 | Restrictions on Subcontractor Sales to the Government (JUL 1995) |
| 52.232-1 | Payments (APR 1984) |
| 52.233-3 | Protest after Award (AUG 1996) |
| 52.217-8 | Option to Extend Services (NOV 1999) |
| 52.217-9 | Option to Extend the Term of the Contract (MAR 2000) |
| | (a) within 15 days |
| | (b) not exceed  72 months/years) |
| 52.219-9 | Small Business Subcontracting Plan ALTERNATE I (OCT 2001) |
| | |
| 52.227-1 | Authorization and Consent (JUL 1995) |
| 52.227-19 | Commercial Computer Software-Restricted Rights (JUN 1987) |
| 52.228-3 | Workers' Compensation Insurance (Defense Base Act) (APR 1984) |
| 52.228-5 | Insurance-Work on a Government Installation (JAN 1997) |
| 52.229-3 | Federal, State, and Local Taxes (APR 2003) |
| 52.232-8 | Discounts for Prompt Payment (FEB 2002) |
| 52.232-9 | Limitation on Withholding of Payments (APR 1984) |
| 52.232-11 | Extras (APR 1984) |
| 52.232-19 | Availability of Funds for the Next Fiscal Year (APR 1984) |
| 52.237-2 | Protection of Government Buildings, Equipment, and Vegetation (APR 1984) |
| 52.237-3 | Continuity of Services (JAN 1991) |
| 52.243-1 | ALTERNATE II (APR 1984)(Changes-Fixed Price) |
| 52.244-5 | Competition in Subcontracting (DEC 1996) |
| 52.245-2 | Government Property (Fixed-Price Contracts) (MAY 2004) |
| 52.245-2 | ALTERNATE I (APR 1984) |
| 52.249-2 | Termination for Convenience of the Government (Fixed-Price)(MAY 2004) |
| 52.249-8 | Default (Fixed-Price Supply and Service) (APR 1984) |
| 252.201-7000 | Contracting Officer's Representative (DEC 1991) |

## CLAUSES AND PROVISIONS - INDEFINITE DELIVERY

| Clause No.. | Title |
|-------------|-------|
| 52.216-18 | Ordering (OCT 1995) |
| | a) issued from effective date of contract performance through 12 months thereafter |
| | Unless extended by exercise of options herein |
| | |
| 52.216-19 | Order Limitations (OCT 1995) |
| | (a) less than $1.00 |
| | (b)(1) in excess of |
| | (b)(2) in excess of |
| | (b)(3) within 30 days |
| | (d) within 7 days |
| | |
| 52.216-22 | Indefinite Quantity (OCT 1995) |
| | (d) The end of the performance period |
| 52.222-41 | Service Contract Act of 1965, as Amended (JUL 2005) |
| 52.222-43 | Fair Labor Standards Act and Service Contract Act - Price Adjustment |

(Multiple Year and Option Contracts) (NOV 2006)
52.244-6    SUBCONTRACTS FOR COMMERCIAL ITEMS (MAR 2007)

CLAUSES INCORPORATED BY REFERENCE (FAR 52.252-2) (FEB 1998)

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. Also, the full text of a clause may be accessed electronically at this/these address(es):

http://farsite.hill.af.mil/vffara.htm

SECURITY REQUIREMENTS (FAR 52.204-2)(AUG 1996)

(a) This clause applies to the extent that this contract involves access to information classified "CONFIDENTIAL."

(b) The Contractor shall comply with (1) the Security Agreement (DD Form 441), including the National Industrial Security Program Operating Manual, and (2) any revisions to that manual, notice of which has been furnished to the Contractor.

(c) If, subsequent to the date of this contract, the security classification or security requirements under this contract are changed by the Government and if the changes cause an increase or decrease in security costs or otherwise affect any other term or condition of this contract, the contract shall be subject to an equitable adjustment as if the changes were directed under the Changes clause of this contract.

The Contractor agrees to insert terms that conform substantially to the language of this clause, including this paragraph (d) but excluding any reference to the Changes clause of this contract, in all subcontracts under this contract that involve access to classified information.

CLAUSES INCORPORATED BY FULL TEXT

(i) 52.219-8, Utilization of Small Business Concerns (MAY 2004) (15 U.S.C. 637(d)(2) and (3)), in all subcontracts that offer further subcontracting opportunities. If the subcontract (except subcontracts to small business concerns) exceeds $550,000 ($1,000,000 for construction of any public facility), the subcontractor must include 52.219-8 in lower tier subcontracts that offer subcontracting opportunities.

(ii) 52.222-26, Equal Opportunity (MAR 2007) (E.O. 11246).

(iii) 52.222-35, Equal Opportunity for Special Disabled Veterans, Veterans of the Vietnam Era and Other Eligible Veterans  (SEP 2006) (38 U.S.C. 4212(a)).

(iv) 52.222-36, Affirmative Action for Workers with Disabilities (JUN 1998) (29 U.S.C. 793).

(v) 52.222-39, Notification of Employee Rights Concerning Payment of Union Dues or Fees (DEC 2004) (E.O. 13201). Flow down as required in accordance with paragraph (g) of FAR clause 52.222-39.

(vi) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (FEB 2006) (46 U.S.C. Appx 1241 and 10 U.S.C. 2631) (flow down required in accordance with paragraph (d) of FAR clause 52.247-64).



# EXHIBIT D



LOCKHEED MARTIN

**LOCKHEED MARTIN CORPORATION**

**CORPDOC 2**

**GENERAL PROVISIONS AND FAR FLOWDOWN PROVISIONS FOR SUBCONTRACTS/PURCHASE ORDERS (ALL AGENCIES) FOR COMMERCIAL ITEMS UNDER A U.S. GOVERNMENT PRIME CONTRACT**

**SECTION I - GENERAL PROVISIONS**

**1. ACCEPTANCE OF CONTRACT/TERMS AND CONDITIONS**

(a) This Contract integrates, merges, and supersedes any prior offers, negotiations, and agreements concerning the subject matter hereof and constitutes the entire agreement between the parties.

(b) SELLER's acknowledgment, acceptance of payment, or commencement of performance, shall constitute SELLER's unqualified acceptance of this Contract.

(c) Unless expressly accepted in writing by LOCKHEED MARTIN, additional or differing terms or conditions proposed by SELLER or included in SELLER's acknowledgment are objected to by LOCKHEED MARTIN and have no effect.

**2. APPLICABLE LAWS**

(a) This Contract shall be governed by and construed in accordance with the laws of the State from which this Contract is issued by Lockheed Martin, without regard to its conflicts of laws provisions, except that any provision in this Contract that is (i) incorporated in full text or by reference from the Federal Acquisition Regulation (FAR); or (ii) incorporated in full text or by reference from any agency regulation that implements or supplements the FAR or; (iii) that is substantially based on any such agency regulation or FAR provision, shall be construed and interpreted according to the federal common law of government contracts as enunciated and applied by federal judicial bodies, boards of contracts appeals, and quasi-judicial agencies of the federal Government.

(b) (1) SELLER, in the performance of this Contract, agrees to comply with all applicable local, state, and federal laws, orders, rules, regulations, and ordinances. SELLER shall procure all licenses/permits, and pay all fees, and other required charges, and shall comply with of all applicable guidelines and directives of any local, state, and/or federal governmental authority.

(2) If: (i) LOCKHEED MARTIN's contract price or fee is reduced; (ii) LOCKHEED MARTIN's costs are determined to be unallowable; (iii) any fines, penalties, or interest are assessed on LOCKHEED MARTIN; or (iv) LOCKHEED MARTIN incurs any other costs or damages; as a result of any violation of applicable laws, orders, rules, regulations, or ordinances by SELLER, its officers, employees, agents, suppliers, or subcontractors at any tier, LOCKHEED MARTIN may proceed as provided for in (3) below.

(3) Upon the occurrence of any of the circumstances, other than withholdings, identified in paragraph (2) above, LOCKHEED MARTIN may make a reduction of corresponding amounts (in whole or in part) in the price of this Contract or any other contract with SELLER, and/or may demand payment (in whole or in part) of the corresponding amounts. SELLER shall promptly pay amounts so demanded. In the case of withholding(s), LOCKHEED MARTIN may withhold the same amount from SELLER under this Contract.

(4) In the event it is determined that the Work is not a Commercial item as defined at FAR 2.101, then SELLER agrees that CORPDOC 3, General Provisions and FAR Flowdown Provisions for Subcontracts/Purchase Orders (All Agencies) for Non-Commercial items under a U.S. Governmental Prime Contract, and the corresponding agency flowdowns shall be applicable to this Contract, in lieu of these terms and conditions, effective as of the date of this Contract.

(c) SELLER represents that each chemical substance constituting or contained in Work sold or otherwise transferred to LOCKHEED MARTIN hereunder is on the list of chemical substances compiled and published by the Administrator of the Environmental Protection Administration pursuant to the Toxic Substances Control Act (15 U.S.C. Sec. 2601 et seq.) as amended.

(d) SELLER shall provide to LOCKHEED MARTIN with each delivery any Material Safety Data Sheet applicable to the Work in conformance with and containing such information as required by the Occupational Safety and Health Act of 1970 and regulations promulgated there under, or its State approved counterpart.



**3. ASSIGNMENT**

Any assignment of SELLER's Contract rights or delegation of SELLER's duties shall be void, unless prior written consent is given by LOCKHEED MARTIN. Nevertheless, SELLER may assign rights to be paid amounts due, or to become due, to a financing institution if LOCKHEED MARTIN is




promptly furnished a signed copy of such assignment reasonably in advance of the due date for payment of any such amounts. Amounts assigned shall be subject to setoff or recoupment for any present or future claims of LOCKHEED MARTIN against SELLER. LOCKHEED MARTIN shall have the right to make settlements and/or adjustments in price without notice to any assignee financing institution.

## 4. CHANGES

(a) The LOCKHEED MARTIN Procurement Representative may at any time, by written notice, and without notice to sureties or assignees, make changes within the general scope of this Contract in any one or more of the following: (i) drawings, designs, or specifications; (ii) method of shipping or packing; (iii) place of inspection, acceptance, or point of delivery; and (iv) delivery schedule.

(b) If any such change causes an increase or decrease in the cost of, or the time required for, performance of any part of this Contract, LOCKHEED MARTIN shall make an equitable adjustment in the Contract price and/or delivery schedule, and modify this Contract accordingly. Changes to the delivery schedule will be subject to a price adjustment only.

(c) SELLER must assert its right to an equitable adjustment under this clause within thirty (30) days from the date of receipt of the written change order from LOCKHEED MARTIN. If the SELLER's proposed equitable adjustment includes the cost of property made obsolete or excess by the change, LOCKHEED MARTIN shall have the right to prescribe the manner of disposition of the property.

(d) Failure to agree to any adjustment shall be resolved in accordance with the "Disputes" clause of this Contract. However, nothing contained in this "Changes" clause shall excuse SELLER from proceeding without delay in the performance of this Contract as changed.

## 5. COMMUNICATION WITH LOCKHEED MARTIN CUSTOMER

LOCKHEED MARTIN shall be solely responsible for all liaison and coordination with the LOCKHEED MARTIN customer, including the U. S. Government, as it affects the applicable prime contract, this Contract, and any related contract.

## 6. CONTRACT DIRECTION



(a) Only the LOCKHEED MARTIN Procurement Representative has authority on behalf of LOCKHEED MARTIN to make changes to this Contract. All amendments must be in writing and executed by the parties.

(b) LOCKHEED MARTIN engineering and technical personnel may from time to time render assistance or give technical advice or discuss or effect an exchange of information with SELLER' personnel concerning the Work hereunder. No such action shall be deemed to be a change under the "Changes" clause of this Contract and shall not be the basis for equitable adjustment.

(c) Except as otherwise provided herein, all notices to be furnished by the SELLER shall be in writing and sent to the LOCKHEED MARTIN Procurement Representative.

## 7. DEFAULT

(a) LOCKHEED MARTIN, by written notice, may terminate this Contract for default, in whole or in part, if SELLER (i) fails to comply with any of the terms of this Contract; (ii) fails to make progress so as to endanger performance of this Contract; (iii) fails to provide adequate assurance of future performance; (iv) files or has filed against it a petition in bankruptcy; or (v) becomes insolvent or suffers a material adverse change in financial condition. SELLER shall have ten (10) days (or such longer period as LOCKHEED MARTIN may authorize in writing) to cure any such failure after receipt of notice from LOCKHEED MARTIN. Default involving delivery schedule delays, bankruptcy or adverse change in financial condition shall not be subject to the cure provision.

(b) Following a termination for default of this Contract, SELLER shall be compensated only for Work actually delivered and accepted. LOCKHEED MARTIN may require SELLER to deliver to LOCKHEED MARTIN any supplies and materials, manufacturing materials, and manufacturing drawings that SELLER has specifically produced or acquired for the terminated portion of this Contract. LOCKHEED MARTIN and SELLER shall agree on the amount of payment for these other deliverables.

(c) Upon the occurrence and during the continuation of a default, LOCKHEED MARTIN may exercise any and all rights and remedies available to it under applicable law and equity, including without limitation, cancellation of this Contract. If after termination for default under this Contract, it is determined that SELLER was not in default, such termination shall be deemed a termination for convenience.

(d) SELLER shall continue all Work not terminated or cancelled.

## 8. DEFINITIONS



The following terms shall have the meanings set forth below:

CorpDoc 2 (01-2008)





(a) "Contract" means the instrument of contracting, such as "Purchase Order", "PO", "Subcontract", or other such type designation, including these General Provisions, all referenced documents, exhibits and attachments. If these terms and conditions are incorporated into a "master" agreement that provides for releases, (in the form of a Purchase Order or other such document) the term "Contract" shall also mean the Release document for the Work to be performed.

(b) "FAR" means the Federal Acquisition Regulation, issued as Chapter 1 of Title 48, Code of Federal Regulations.

(c) "LOCKHEED MARTIN" means LOCKHEED MARTIN CORPORATION, acting through its companies or business units as identified on the face of this Contract. If a subsidiary or affiliate of LOCKHEED MARTIN CORPORATION is identified on the face of this Contract, then "LOCKHEED MARTIN" means that subsidiary or affiliate.

(d) "LOCKHEED MARTIN Procurement Representative" means a person authorized by LOCKHEED MARTIN's cognizant procurement organization to administer and/or execute this Contract.

(e) "SELLER" means the party identified on the face of this Contract with whom LOCKHEED MARTIN is contracting.

(f) "Work" means all required labor, articles, materials, supplies, goods, and services constituting the subject matter of this Contract.

## 9. DISPUTES

All disputes under this Contract that are not disposed of by mutual agreement may be decided by recourse to an action at law or in equity. Until final resolution of any dispute hereunder, SELLER shall diligently proceed with the performance of this Contract as directed by LOCKHEED MARTIN.

## 10. ELECTRONIC CONTRACTING

The parties agree that if this Contract is transmitted electronically neither party shall contest the validity of this Contract, or any acknowledgement thereof, on the basis that this Contract or acknowledgement contains an electronic signature.

## 11. EXPORT CONTROL

(a) SELLER agrees to comply with all applicable U.S. export control laws and regulations, specifically including, but not limited to, the requirements of the Arms Export Control Act, 22 U.S.C.2751-2794, including the International Traffic in Arms Regulation (ITAR), 22 C.F.R. 120 et seq.; and the Export Administration Act, 50 U.S.C. app. 2401-2420, including the Export Administration Regulations, 15 C.F.R. 730-774; including the requirement for obtaining any export license or agreement, if applicable. Without limiting the foregoing, SELLER agrees that it will not transfer any export controlled item, data, or services, to include transfer to foreign persons employed by or associated with, or under contract to SELLER or SELLER's lower-tier suppliers, without the authority of an export license, agreement, or applicable exemption or exception.

(b) SELLER agrees to notify LOCKHEED MARTIN if any deliverable under this Contract is restricted by export control laws or regulations.

(c) SELLER shall immediately notify the LOCKHEED MARTIN Procurement Representative if SELLER is, or becomes, listed in any Denied Parties List or if SELLER's export privileges are otherwise denied, suspended or revoked in whole or in part by any U.S. Government entity or agency.

(d) If SELLER is engaged in the business of either exporting or manufacturing (whether exporting or not) defense articles or furnishing defense services, SELLER represents that it is registered with the Office of Defense Trade Controls, as required by the ITAR, and it maintains an effective export/import compliance program in accordance with the ITAR.

(e) Where SELLER is a signatory under a LOCKHEED MARTIN export license or export agreement (e.g., TAA, MLA), SELLER shall provide prompt notification to the LOCKHEED MARTIN Procurement Representative in the event of changed circumstances including, but not limited to, ineligibility, a violation or potential violation of the ITAR, and the initiation or existence of a U.S. Government investigation, that could affect the SELLER's performance under this Contract.

(f) SELLER shall be responsible for all losses, costs, claims, causes of action, damages, liabilities and expense, including attorneys' fees, all expense of litigation and/or settlement, and court costs, arising from any act or omission of SELLER, its officers, employees, agents, suppliers, or subcontractors at any tier, in the performance of any of its obligations under this clause.

## 12. EXTRAS

Work shall not be supplied in excess of quantities specified in this Contract. SELLER shall be liable for handling charges and return shipment costs for any excess quantities.

## 13. FURNISHED PROPERTY



CorpDoc 2 (01-2008)                                    3

 

(a) LOCKHEED MARTIN may provide to SELLER property owned by either LOCKHEED MARTIN or its customer (Furnished Property). Furnished Property shall be used only for the performance of this Contract.

(b) Title to Furnished Property shall remain in LOCKHEED MARTIN or its customer. SELLER shall clearly mark (if not so marked) all Furnished Property to show its ownership.

(c) Except for reasonable wear and tear, SELLER shall be responsible for, and shall promptly notify LOCKHEED MARTIN of, any loss or damage. Without additional charge, SELLER shall manage, maintain, and preserve Furnished Property in accordance with good commercial practice.

(d) At LOCKHEED MARTIN's request, and/or upon completion of this Contract, the SELLER shall submit, in an acceptable form, inventory lists of Furnished Property and shall deliver or make such other disposal as may be directed by LOCKHEED MARTIN.

## 14. GRATUITIES/KICKBACKS

(a) SELLER shall not offer or give a kickback or gratuity (in the form of entertainment, gifts, or otherwise) for the purpose of obtaining or rewarding favorable treatment as a LOCKHEED MARTIN supplier.

(b) By accepting this Contract, SELLER certifies and represents that it has not made or solicited and will not make or solicit kickbacks in violation of FAR 52.203-7 or the Anti-Kickback Act of 1986 (41 USC 51-58), both of which are incorporated herein by this specific reference, except that paragraph (c)(1) of FAR 52.203-7 shall not apply.

## 15. INDEPENDENT CONTRACTOR RELATIONSHIP

(a) SELLER is an independent contractor in all its operations and activities hereunder. The employees used by SELLER to perform Work under this Contract shall be SELLER's employees exclusively without any relation whatsoever to LOCKHEED MARTIN.



**(b) SELLER shall be responsible for and hold harmless LOCKHEED MARTIN and its customers from and against all losses, costs, claims, causes of action, damages, liabilities, and expenses, including attorneys fees, all expenses of litigation and/or settlement, and court costs, arising from any act or omission of SELLER, its officers, employees, agents, suppliers, or subcontractors at any tier, in the performance of any of its obligations under this Contract.**

## 16. INFORMATION OF LOCKHEED MARTIN

Information provided by LOCKHEED MARTIN to SELLER remains the property of LOCKHEED MARTIN. SELLER agrees to comply with the terms of any Proprietary Information Agreement with LOCKHEED MARTIN and to comply with all proprietary information markings and restrictive legends applied by LOCKHEED MARTIN to anything provided hereunder to SELLER. SELLER agrees not to use any LOCKHEED MARTIN provided information for any purpose except to perform this Contract and agrees not to disclose such information to third parties without the prior written consent of LOCKHEED MARTIN. SELLER shall maintain data protection processes and systems sufficient to adequately protect LOCKHEED MARTIN INFORMATION.

## 17. INFORMATION OF SELLER

SELLER shall not provide any proprietary information to LOCKHEED MARTIN without prior execution of a proprietary information agreement by the parties.

## 18. INSPECTION AND ACCEPTANCE

(a) LOCKHEED MARTIN and its customer may inspect all Work at reasonable times and places, including, when practicable, during manufacture and before shipment. SELLER shall provide all information, facilities, and assistance necessary for safe and convenient inspection without additional charge.

(b) No such inspection shall relieve SELLER of its obligations to furnish and warrant all Work in accordance with the requirements of this Contract. LOCKHEED MARTIN's final inspection and acceptance shall be at destination.

(c) If SELLER delivers non-conforming Work, LOCKHEED MARTIN may, in addition to any other remedies available at law or at equity: (i) accept all or part of such Work at an equitable price reduction; or (ii) reject such Work; or (iii) require SELLER, at SELLER's cost, to make all repairs, modifications, or replacements at the direction of LOCKHEED MARTIN necessary to enable such Work to comply in all respects with Contract requirements.

(d) SELLER shall not re-tender rejected Work without disclosing the corrective action taken.



## 19. INSURANCE/ENTRY ON LOCKHEED MARTIN PROPERTY

 

(a) In the event that SELLER, its employees, agents, or subcontractors enter the site(s) of LOCKHEED MARTIN or its customers for any reason in connection with this Contract then SELLER and its subcontractors shall procure and maintain for the performance of this Contract workers compensation, comprehensive general liability, bodily injury and property damage insurance in reasonable amounts, and such other insurance as LOCKHEED MARTIN may require. In addition, SELLER and its subcontractors shall comply with all site requirements. SELLER shall provide LOCKHEED MARTIN thirty (30) days advance written notice prior to the effective date of any cancellation or change in the term or coverage of any of SELLER's required insurance, provided however such notice shall not relieve SELLER's of its obligations to procure and maintain the required insurance. If requested, SELLER shall send a "Certificate of Insurance" showing SELLER's compliance with these requirements. SELLER shall name LOCKHEED MARTIN as an additional insured for the duration of this Contract. Insurance maintained pursuant to this clause shall be considered primary as respects the interest of LOCKHEED MARTIN and is not contributory with any insurance, which LOCKHEED MARTIN may carry. "Subcontractor" as used in this clause shall include SELLER's subcontractors at any tier. SELLER's obligations for procuring and maintaining insurance coverages are freestanding and are not affected by any other language in this Contract.

(b) SELLER shall defend, indemnify and hold harmless LOCKHEED MARTIN, its officers, employees, and agents from any losses, costs, claims, causes of action, damages, liabilities, and expenses, including attorneys fees, all expenses of litigation and/or settlement, and court costs, by reason of property damage or loss or personal injury to any person caused in whole or in part by the actions or omissions of SELLER, its officers, employees, agents, suppliers, or subcontractors.

## 20. INTELLECTUAL PROPERTY

(a) SELLER warrants that the Work performed or delivered under this Contract will not infringe or otherwise violate the intellectual property rights of any third party in the United States or any foreign country. SELLER agrees to defend, indemnify, and hold harmless LOCKHEED MARTIN and its customers from and against any claims, damages, losses, costs, and expenses, including reasonable attorneys fees, arising out of any action by a third party that is based upon a claim that the Work performed or delivered under this Contract infringes or otherwise violates the intellectual property rights of any person or entity.

(b) All data, copyrights, reports, and works of authorship developed in performance of this Contract shall be the sole property of LOCKHEED MARTIN, shall be used by SELLER solely in work for LOCKHEED MARTIN. To the extent that any of the deliverable items may not, by operation of law, be works made for hire, SELLER hereby assigns to LOCKHEED MARTIN the ownership of copyright in the deliverable items and LOCKHEED MARTIN shall have the right to obtain and hold in its own name copyrights, registrations, and similar protection which may be available in the deliverable items. SELLER agrees to give LOCKHEED MARTIN or its designees all assistance reasonably required to perfect such rights.

(c) To the extent that any pre-existing inventions, technology, designs, works of authorship, mask works, technical information, computer software, and other information or materials are used, included, or contained in the Work or deliverable items and not owned by LOCKHEED MARTIN pursuant to this or a previous agreement with SELLER, SELLER grants to LOCKHEED MARTIN an irrevocable, nonexclusive, world-wide, royalty-free license to: (i) make, have made, sell, offer for sale, use, execute, reproduce, display, perform, distribute (internally or externally) copies of, and prepare derivative works based upon, such pre-existing inventions, technology, designs, works of authorship, mask works, technical information, computer software, and other information or materials and derivative works thereof; and (ii) authorize others to do any, some or all of the foregoing.

(d) All reports, memoranda or other materials in written form, including machine readable form, prepared by SELLER pursuant to this Contract and furnished to LOCKHEED MARTIN by SELLER hereunder shall become the sole property of LOCKHEED MARTIN.

## 21. NEW MATERIALS

The Work to be delivered hereunder shall consist of new materials, as defined in FAR 52.211-5, not used, or reconditioned, remanufactured, or of such age as to impair its usefulness or safety.

## 22. OFFSET CREDIT/COOPERATION

This Contract has been entered into in direct support of LOCKHEED MARTIN's international offset programs. All offset benefit credits resulting from this Contract are the sole property of LOCKHEED MARTIN to be applied to the offset program of its choice. SELLER agrees to assist LOCKHEED MARTIN in securing appropriate offset credits from the respective country government authorities.

## 23. PACKING AND SHIPMENT

(a) Unless otherwise specified, all Work is to be packed in accordance with good commercial practice.

(b) A complete packing list shall be enclosed with all shipments. SELLER shall mark containers or packages with necessary lifting, loading, and shipping information, including the LOCKHEED MARTIN Contract number, item number, dates of shipment, and the names and addresses of consignor and consignee. Bills of lading shall include this Contract number.



(c) Unless otherwise specified, delivery shall be FOB Place of Shipment.

## 24. PAYMENTS, TAXES, AND DUTIES

CorpDoc 2 (01-2008)                                        5





(a) Unless otherwise provided, terms of payment shall be net thirty (30) days from the latest of the following: (1) LOCKHEED MARTIN's receipt of the SELLER's proper invoice; (2) scheduled delivery date of the Work; or (3) actual delivery of the Work.

(b Each payment made shall be subject to reduction to the extent of amounts which are found by LOCKHEED MARTIN or SELLER not to have been properly payable, and shall also be subject to reduction for overpayments. SELLER shall promptly notify LOCKHEED MARTIN of any such overpayments found by SELLER.

(c) LOCKHEED MARTIN shall have a right to recoup or setoff, as the case may be, against payments due or at issue under this Contract or any other contract between the parties.

(d) Payment shall be deemed to have been made as of the date of mailing LOCKHEED MARTIN's payment or electronic funds transfer.

(e) Unless otherwise specified, prices include all applicable federal, state and local taxes, duties, tariffs, and similar fees imposed by any government, all of which shall be listed separately on the invoice.

## 25. PRECEDENCE

Any inconsistencies in this Contract shall be resolved in accordance with the following descending order of precedence: (1) Face of the Purchase Order and/or Task Order, release document, or schedule, (including any continuation sheets), as applicable, including any special terms and conditions; (2) this CorpDoc; and (3) the Statement of Work.

## 26. PRIORITY RATING

If so identified, this Contract is a "rated order" certified for national defense use, and the SELLER shall follow all the requirements of the Defense Priorities and Allocation System Regulation (15 C.F.R. Part 700).

## 27. PROHIBITED SOFTWARE



(a) This clause only applies to Work that includes the delivery of software.

(b) As used herein, "Prohibited License" means the General Public License ("GPL") or Lesser/Library GPL, the Artistic License (e.g., PERL), the Mozilla Public License, the Netscape Public License, the Sun Community Source License, the Sun Industry Standards License, or variations thereof, including without limitation licenses referred to as "GPL-Compatible, Free Software License."

(c) As used herein, "Prohibited Software" means software that incorporates or embeds software in, or uses software in connection with, as part of, bundled with, or alongside any (1) open source, publicly available, or "free" software, library or documentation, or (2) software that is licensed under a Prohibited License, or (3) software provided under a license that (a) subjects the delivered software to any Prohibited License, or (b) requires the delivered software to be licensed for the purpose of making derivative works or be redistributable at no charge, or (c) obligates LOCKHEED MARTIN to sell, loan, distribute, disclose or otherwise make available or accessible to any third party (i) the delivered software, or any portion thereof, in object code and/or source code formats, or (ii) any products incorporating the delivered software, or any portion thereof, in object code and/or source code formats.

(d) Unless SELLER has obtained LOCKHEED MARTIN's prior written consent, which LOCKHEED MARTIN may withhold in its sole discretion, SELLER shall not use in connection with this Contract, or deliver to LOCKHEED MARTIN, any Prohibited Software.

(e) SELLER agrees to defend, indemnify, and hold harmless LOCKHEED MARTIN, its customers and suppliers from and against any claims, damages, losses, costs, and expenses, including reasonable attorneys fees, relating to use in connection with this Contract or the delivery of Prohibited Software.

## 28. QUALITY CONTROL SYSTEM

(a) SELLER shall provide and maintain a quality control system to an industry recognized Quality Standard and in compliance with any other specific quality requirements identified in this Contract.

(b) Records of all quality control inspection work by SELLER shall be kept complete and available to LOCKHEED MARTIN and its customers.

## 29. RELEASE OF INFORMATION



Except as required by law, no public release of any information, or confirmation or denial of same, with respect to this Contract or the subject matter hereof, will be made by SELLER without the prior written approval of LOCKHEED MARTIN.

## 30. SEVERABILITY

CorpDoc 2 (01-2008)





Each clause, paragraph and subparagraph of this Contract is severable, and if one or more of them are declared invalid, the remaining provisions of this Contract will remain in full force and effect.

**31. STOP WORK**

(a) SELLER shall stop Work for up to ninety (90) days in accordance with any written notice received from LOCKHEED MARTIN, or for such longer period of time as the parties may agree and shall take all reasonable steps to minimize the incurrence of costs allocable to the Work during the period of Work stoppage.

(b) Within such period, LOCKHEED MARTIN shall either terminate in accordance with the provisions of this Contract or continue the Work by written notice to SELLER. In the event of a continuation, an equitable adjustment in accordance with the principles of the "Changes" clause shall be made to the price, delivery schedule, or other provision(s) affected by the Work stoppage, if applicable, provided that the claim for equitable adjustment is made within thirty (30) days after date of notice to continue.

**32. SURVIVABILITY**

(a) If this Contract expires, is completed, or is terminated, SELLER shall not be relieved of those obligations contained in the following clauses:

Applicable Laws
Electronic Contracting
Export Control
Independent Contractor Relationship
Information of Lockheed Martin
Insurance/Entry on Lockheed Martin Property
Intellectual Property
Prohibited Software
Release of Information
Warranty



(b) Those U. S. Government flowdown provisions that by their nature should survive.

**33. TERMINATION FOR CONVENIENCE**

(a) For specially performed Work:

(1) LOCKHEED MARTIN may terminate part or all of this Contract for its convenience by giving written notice to SELLER.

(2) Upon termination, in accordance with LOCKHEED MARTIN written direction, SELLER will immediately: (i) Cease work; (ii) Prepare and submit to LOCKHEED MARTIN an itemization of all completed and partially completed deliverables and services; (iii) Deliver to LOCKHEED MARTIN any and all Work completed up to the date of termination at the agreed upon prices; and (iv) Deliver upon request any Work in process. In the event LOCKHEED MARTIN terminates for its convenience after performance has commenced, LOCKHEED MARTIN will compensate SELLER for the actual, allowable, and reasonable expenses incurred by SELLER for Work in process up to and including the date of termination provided SELLER uses reasonable efforts to mitigate LOCKHEED MARTIN's liability under this clause.

(3) In no event shall LOCKHEED MARTIN be liable for lost or anticipated profits, or unabsorbed indirect costs or overhead, or for any sum in excess of the total Contract price. SELLER's termination claim shall be submitted within ninety (90) days from the effective date of the termination.

(b) For other than specially performed Work: LOCKHEED MARTIN may terminate part or all of this Contract for its convenience by giving written notice to SELLER and LOCKHEED MARTIN's only obligation to SELLER shall be payment of a mutually agreed-upon restocking or service charge.

(c) In either case, SELLER shall continue all Work not terminated.

**34. TIMELY PERFORMANCE**

(a) SELLER's timely performance is a critical element of this Contract.

(b) Unless advance shipment has been authorized in writing by LOCKHEED MARTIN, LOCKHEED MARTIN may store at SELLER's expense, or return, shipping charges collect, all Work received in advance of the scheduled delivery date.

(c) If SELLER becomes aware of difficulty in performing the Work, SELLER shall timely notify LOCKHEED MARTIN, in writing, giving pertinent details. This notification shall not change any delivery schedule.



*LOCKHEED MARTIN*

(d) In the event of a termination for convenience or change, no claim will be allowed for any manufacture or procurement in advance of SELLER's normal flow time unless there has been prior written consent by LOCKHEED MARTIN.

## 35. WAIVERS, APPROVALS, AND REMEDIES

(a) Failure by either party to enforce any of the provisions of this Contract or applicable law shall not constitute a waiver of the requirements of such provisions or law, or as a waiver of the right of a party thereafter to enforce such provision or law.

(b) LOCKHEED MARTIN's approval of documents shall not relieve SELLER of its obligation to comply with the requirements of this Contract.

(c) The rights and remedies of either party in this Contract are cumulative and in addition to any other rights and remedies provided by law or in equity.

## 36. WARRANTY

SELLER warrants that all Work furnished pursuant to this Contract shall strictly conform to applicable specifications, drawings, samples, descriptions, and other requirements of this Contract and be free from defects in design, material, and workmanship. This warranty shall begin upon final acceptance and extend for a period of one (1) year. If any nonconforming Work is identified within the warranty period, SELLER, at LOCKHEED MARTIN's option, shall promptly repair, replace, or reperform the Work. Transportation of replacement Work, return of nonconforming Work, and reperformance of Work shall be at SELLER's expense. If repair, or replacement, or reperformance of Work is not timely, LOCKHEED MARTIN may elect to return, reperform, repair, replace, or reprocure the non-conforming Work at SELLER's expense. All warranties shall run to LOCKHEED MARTIN and its customers.

## SECTION II - FAR FLOWDOWN PROVISIONS

## A. INCORPORATION OF FAR CLAUSES

The Federal Acquisition Regulation (FAR) clauses referenced below are incorporated herein by reference, with the same force and effect as if they were given in full text, and are applicable, including any notes following the clause citation, to this Contract. If the date or substance of any of the clauses listed below is different from the date or substance of the clause actually incorporated in the Prime Contract referenced by number herein, the date or substance of the clause incorporated by said Prime Contract shall apply instead. The Contracts Disputes Act shall have no application to this Contract. Any reference to a "Disputes" clause shall mean the "Disputes" clause of this Contract.



## B. GOVERNMENT SUBCONTRACT

(a) This Contract is entered into by the parties in support of a U.S. Government contract.

(b) As used in the FAR clauses referenced below and otherwise in this Contract:

1. "Commercial item" means a commercial item as defined in FAR 2.101.

2. "Contract" means this contract.

3. "Contracting Officer" shall mean the U.S. Government Contracting Officer for LOCKHEED MARTIN's government prime contract under which this Contract is entered.

4. "Contractor" and "Offeror" means the SELLER, as defined in this CorpDoc, acting as the immediate subcontractor to LOCKHEED MARTIN.

5. "Prime Contract" means the contract between LOCKHEED MARTIN and the U.S. Government or between LOCKHEED MARTIN and its higher-tier contractor who has a contract with the U.S. Government.

6. "Subcontract" means any contract placed by the Contractor or lower-tier subcontractors under this Contract.

## C. NOTES

1. Substitute "LOCKHEED MARTIN" for "Government" or "United States" throughout this clause.

2. Substitute "LOCKHEED MARTIN Procurement Representative" for "Contracting Officer", "Administrative Contracting Officer", and "ACO" throughout this clause.

3. Insert "and LOCKHEED MARTIN" after "Government" throughout this clause.





4. Insert "or LOCKHEED MARTIN" after "Government" throughout this clause.

5. Communication/notification required under this clause from/to the Contractor to/from the Contracting Officer shall be through LOCKHEED MARTIN.

6. Insert "and LOCKHEED MARTIN" after "Contracting Officer", throughout the clause.

7. Insert "or LOCKHEED MARTIN PROCUREMENT REPRESENTATIVE" after "Contracting Officer", throughout the clause.

## D. AMENDMENTS REQUIRED BY PRIME CONTRACT

SELLER agrees that upon the request of LOCKHEED MARTIN it will negotiate in good faith with LOCKHEED MARTIN relative to amendments to this Contract to incorporate additional provisions herein or to change provisions hereof, as LOCKHEED MARTIN may reasonably deem necessary in order to comply with the provisions of the applicable Prime Contract or with the provisions of amendments to such Prime Contract. If any such amendment to this Contract causes an increase or decrease in the cost of, or the time required for, performance of any part of the Work under this Contract, an equitable adjustment shall be made pursuant to the "Changes" clause of this Contract.

## E. PRESERVATION OF THE GOVERNMENT'S RIGHTS

If LOCKHEED MARTIN furnishes designs, drawings, special tooling, equipment, engineering data, or other technical or proprietary information (Furnished Items) which the U. S. Government owns or has the right to authorize the use of, nothing herein shall be construed to mean that LOCKHEED MARTIN, acting on its own behalf, may modify or limit any rights the Government may have to authorize the Contractor's use of such Furnished Items in support of other U. S. Government prime contracts.

## F. PROVISIONS OF THE FEDERAL ACQUISITION REGULATION

1. The following FAR clauses apply to this Contract:



(a) FAR 52.215-20 REQUIREMENTS FOR COST OR PRICING DATA OR INFORMATION OTHER THAN COST OR PRICING DATA (OCT 1997) (Note 2 applies.)

(b) FAR 52.215-21 REQUIREMENTS FOR COST OR PRICING DATA OR INFORMATION OTHER THAN COST OR PRICING DATA - MODIFICATIONS (OCT 1997) (Note 2 applies.)

(c) FAR 52.219-8 UTILIZATION OF SMALL BUSINESS CONCERNS (MAY 2004)

(d) FAR 52.222-21 PROHIBITION OF SEGREGATED FACILITIES (FEB 1999)

(e) FAR 52.222-26 EQUAL OPPORTUNITY (MAR 2007) (Only subparagraphs (b) (1)-(11) apply.)

(f) FAR 52.222-50 COMBATING TRAFFICKING IN PERSONS (AUG 2007) (Note 2 applies. In paragraph (e) Note 3 applies)

(g) FAR 52.225-13 RESTRICTIONS ON CERTAIN FOREIGN PURCHASES (FEB 2006)

(h) FAR 52.244-6 SUBCONTRACTS FOR COMMERCIAL ITEMS (MAR 2007)

(i) FAR 52.247-64 PREFERENCE FOR PRIVATELY OWNED U.S. FLAG COMMERCIAL VESSELS ( FEB 2006)

2. The following FAR clauses apply to this Contract if the value of this Contract equals or exceeds $10,000:

(a) FAR 52.222-36 AFFIRMATIVE ACTION FOR WORKERS WITH DISABILITIES (JUN 1998)

3. The following FAR clauses apply to this Contract if the value of this Contract equals or exceeds $100,000:

(a) FAR 52.203-12 LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (SEP 2007)



(b) FAR 52.222-35 EQUAL OPPORTUNITY FOR SPECIAL DISABLED VETERANS, VETERANS OF THE VIETNAM ERA, AND OTHER ELIGIBLE VETERANS (DEC 2001)

(c) FAR 52.222-39 NOTIFICATION OF EMPLOYEE RIGHTS CONCERNING PAYMENT OF UNION DUES OR FEES (DEC 2004)





4. The following FAR clauses apply to this Contract if the value of this Contract equals or exceeds $550,000:

(a) FAR 52.219-9 SMALL BUSINESS SUBCONTRACTING PLAN (NOV 2007) (Applicable if the Contractor is not a small business. Note 2 is applicable to paragraph (c) only. The Contractor's subcontracting plan is incorporated herein by reference.)

5. The following FAR clauses apply to this Contract as indicated:

(a) FAR 52.204-2 SECURITY REQUIREMENTS (AUG 1996) (Applies if the Work requires access to classified information.)

(b) FAR 52.204-9 PERSONAL IDENTITY VERIFICATION OF CONTRACTOR PERSONNEL (SEP 2007) (Applicable where the Contractor will have physical access to a federally-controlled facility or access to a Federal information system.)

(c) FAR 52.223-11 OZONE-DEPLETING SUBSTANCES (MAY 2001) (Applicable if the Work was manufactured with or contains ozone-depleting substances.)

(d) FAR 52.225-1 BUY AMERICAN ACT – SUPPLIES (JUN 2003) (Applicable; if the Work contains other than domestic components. Note 2 applies to the first time "Contracting Officer" is mentioned in paragraph (c).)

(e) FAR 52.225-5 TRADE AGREEMENTS (AUG 2007) (Applicable if the Work contains other than U.S. made or designated country end products as specified in the clause.)

(f) FAR 52.227-19 COMMERCIAL COMPUTER SOFTWARE-RESTRICTED RIGHTS (JUN 1987) (Applicable only if existing computer software is to be delivered under this Contract.)

(g) FAR 52.245-1 GOVERNMENT PROPERTY (JUN 2007) "Contracting Officer" means "Lockheed Martin" except in the definition of Property Administrator and in paragraphs (h)(1)(iii) and where it is unchanged, and in paragraphs (c) and (h)(4) where it includes Lockheed Martin. "Government" is unchanged in the phrases "Government property" and "Government furnished property" and where elsewhere used except in paragraph (d)(1) where it means "Lockheed Martin" and except in paragraphs (d)(2) and (g) where the term includes Lockheed Martin. The following is added as paragraph (n) "Seller shall provide to Lockheed Martin immediate notice of any disapproval, withdrawal of approval, or nonacceptance by the Government of property control system."

## G. CERTIFICATIONS AND REPRESENTATIONS

Contractor acknowledges that LOCKHEED MARTIN will rely upon Contractor certifications and representations contained in this clause and in any written offer, proposal or quote, or company profile submission, which results in award of a contract to Contractor. By entering into such contract, Contractor republishes the certifications and representations submitted with its written offer, including company profile information, and oral offers/quotations made at the request of LOCKHEED MARTIN, and Contractor makes those certifications and representations set forth below. Contractor shall immediately notify LOCKHEED MARTIN of any change of status regarding any certification or representation.

1. FAR 52.203-11 Certification and Disclosure Regarding Payments to Influence Certain Federal Transactions (Applicable to solicitations and contracts exceeding $100,000)

(a) Definitions. As used in this provision--

"Lobbying contact" has the meaning provided at 2 U.S.C. 1602(8).

The terms "agency," "influencing or attempting to influence," "officer or employee of an agency," "person," "reasonable compensation," and "regularly employed" are defined in the FAR clause of this solicitation entitled "Limitation on Payments to Influence Certain Federal Transactions" (52.203-12).

(b) Prohibition. The prohibition and exceptions contained in the FAR clause of this solicitation entitled "Limitation on Payments to Influence Certain Federal Transactions" (52.203-12) are hereby incorporated by reference in this provision.

(c) Certification. Contractor hereby certifies to the best of its knowledge and belief that no Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress on its behalf in connection with the awarding of this contract.

(d) Disclosure. If any registrants under the Lobbying Disclosure Act of 1995 have made a lobbying contact on behalf of the offeror with respect to this contract, Contractor shall complete and submit, with its offer, to LOCKHEED MARTIN OMB Standard Form LLL, Disclosure of Lobbying Activities, to provide the name of the registrants. Contractor need not report regularly employed officers or employees of the offeror to whom payments of reasonable compensation were made.





(e) Penalty. Submission of this certification and disclosure is a prerequisite for making or entering into this contract imposed by 31 U.S.C. 1352. Any person who makes an expenditure prohibited under this provision or who fails to file or amend the disclosure required to be filed or amended by this provision, shall be subject to a civil penalty of not less than $10,000, and not more than $100,000, for each such failure.

**2. FAR 52.209-5 Certification Regarding Debarment, Suspension, Proposed Debarment, and Other Responsibility Matters**

(a) Contractor certifies that, to the best of its knowledge and belief, that CONTRACTOR and/or any of its Principals, (as defined in FAR 52.209-5,) are not presently debarred, suspended, proposed for debarment, or declared ineligible for the award of contracts by any Federal agency.

(b) Contractor shall provide immediate written notice to LOCKHEED MARTIN if, any time prior to award of any contract, it learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

**3. FAR 52.222-22 Previous Contracts and Compliance Reports**

Contractor represents that if Contractor has participated in a previous contract or subcontract subject to the Equal Opportunity clause (FAR 52.222-26) (a) Contractor has filed all required compliance reports and (b) that representations indicating submission of required compliance reports, signed by proposed subcontractors, will be obtained before subcontract awards.

**4. FAR 52.222-25 Affirmative Action Compliance**

Contractor represents: (a) that Contractor has developed and has on file at each establishment, Affirmative Action programs required by the rules and regulations of the Secretary of Labor (41 CFR 60-1 and 60-2), or (b) that in the event such a program does not presently exist, Contractor will develop and place in operation such a written Affirmative Action Compliance Program within one-hundred twenty (120) days from the award of this Contract.



# EXHIBIT E

## SETTLEMENT PROPOSAL (TOTAL COST BASIS)

| | OMB No.: 9000-0012 |
|---|---|
| | Expires:  06/30/2004 |

Public reporting burden for this collection of information is estimated to average  8.5 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVA), Regulatory and Federal Assistance Publications Division, GSA, Washington, DC 20406.

### FOR USE BY A FIXED-PRICE PRIME CONTRACTOR OR FIXED-PRICE SUBCONTRACTOR

| THIS PROPOSAL APPLIES TO (Check one) | | COMPANY |
|---|---|---|
| ☐ A PRIME CONTRACT WITH THE GOVERNMENT | ☒ SUBCONTRACT OR PURCHASE ORDER | Securitas Security Services USA, Inc. |
| SUBCONTRACT OR PURCHASE ORDER NO(S). | | STREET ADDRESS |
| 7200004909 | | 1333 Butterfield Road |

| CONTRACTOR WHO SENT NOTICE OF TERMINATION | CITY AND STATE (Include ZIP Code) |
|---|---|
| NAME | Downers Grove, Illinois 60515 |
| Lockheed Martin | NAME OF GOVERNMENT AGENCY |
| ADDRESS (Include ZIP Code) | US Navy, FISC Philadelphia |
| 500 Woodlake Drive, Chesapeake, VA. | GOVERNMENT PRIME CONTRACT NO.          CONTRACTOR'S REFERENCE NO. |
| If moneys payable under the contract have been assigned, give the following: | N00189-08-D-Z003 |
| NAME OF ASSIGNEE | EFFECTIVE DATE OF TERMINATION |
| | July 16, 2009 |
| ADDRESS (Include ZIP Code) | PROPOSAL NO.          CHECK ONE |
| | ☒ INTERIM     ☐ FINAL |
| SF 1439, SCHEDULE OF ACCOUNTING INFORMATION   ☐ IS   ☐ IS NOT ATTACHED (If not, explain below) | |

### SECTION I - STATUS OF CONTRACT OR ORDER AT EFFECTIVE DATE OF TERMINATION

| PRODUCTS COVERED BY TERMINATED CONTRACT OR PURCHASE ORDER | | FINISHED | | | UNFINISHED OR NOT COMMENCED | | TOTAL COVERED BY CONTRACT OR ORDER |
|---|---|---|---|---|---|---|---|
| | | PREVIOUSLY SHIPPED AND INVOICED | ON HAND | | SUBSEQUENTLY COMPLETED AND INVOICED* | NOT TO BE COMPLETED | |
| | | | PAYMENT TO BE RECEIVED THROUGH INVOICING | PAYMENT NOT TO BE RECEIVED THROUGH INVOICING | | | |
| (a) | | (b) | (c) | (d) | (e) | (f) | (g) |
| | QUANTITY | | | | | | |
| | $ | | | | | | |
| | QUANTITY | | | | | | |
| | $ | | | | | | |
| | QUANTITY | | | | | | |
| | $ | | | | | | |

### SECTION II - PROPOSED SETTLEMENT

| NO. | ITEM (a) | (Use Columns (b) and (c) only when previous proposal has been filed) | | TOTAL PROPOSED TO DATE (d) | FOR USE OF CONTRACTING AGENCY ONLY (e) |
|---|---|---|---|---|---|
| | | TOTAL PREVIOUSLY PROPOSED (b) | INCREASE OR DECREASE BY THIS PROPOSAL (c) | | |
| 1 | DIRECT MATERIAL | | | 2,157,672.17 | |
| 2 | DIRECT LABOR | | | 1,343,797.98 | |
| 3 | INDIRECT FACTORY EXPENSE (from Schedule A) | | | N/A | |
| 4 | SPECIAL TOOLING AND SPECIAL TEST EQUIPMENT (SF 1428) | | | N/A | |
| 5 | OTHER COSTS (from Schedule B) | | | 1,148,208.85 | |
| 6 | GENERAL AND ADMINISTRATIVE EXPENSES (from Schedule C) | | | 588,649.36 | |
| 7 | TOTAL COSTS (Items 1 thru 6) | | | 5,238,328.36 | |
| 8 | PROFIT (Explain in Schedule D) | | | 648,102.95 | |
| 9 | TOTAL (Items 7 and 8) | | | 5,886,431.31 | |
| 10 | DEDUCT FINISHED PRODUCT INVOICED OR TO BE INVOICED* | | | 0 | |
| 11 | TOTAL (Item 9 less Item 10) | | | 5,886,431.31 | |
| 12 | SETTLEMENT EXPENSES (from Schedule E) | | | 144,319.84 | |
| 13 | TOTAL (Items 11 and 12) | | | 6,030,751.14 | |
| 14 | SETTLEMENTS WITH SUBCONTRACTORS (from Schedule F) | | | 0 | |
| 15 | GROSS PROPOSED SETTLEMENT (Items 13 thru 14) | | | 6,030,751.14 | |
| 16 | DISPOSAL AND OTHER CREDITS (from Schedule G) | | | -81,829.36 | |
| 17 | NET PROPOSED SETTLEMENT (Item 15 less 16) | | | 5,948,921.78 | |
| 18 | ADVANCE, PROGRESS & PARTIAL PAYMENTS (from Schedule H) | | | -800,000.00 | |
| 19 | NET PAYMENT REQUESTED (Item 17 less 18) | | | 5,148,921.78 | |

* Column (e), Section I, should only be used in the event of a partial termination, in which the total cost reported in Section II should be accumulated to date of completion of the continued portion of the contract and the deduction for finished product Item 10, Section II should be the contract price of finished product in Column (b), (c), and (e), Section I.

NOTE:  File inventory schedule (SF 1428) for allocable inventories on hand at date of termination (See 49.206).

### (When the space provided for any information is insufficient, continue on a separate sheet.)



AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is unusable

STANDARD FORM 1436 (REV. 5/2004)
Prescribed by GSA   FAR (48 CFR) 53.249(b)(2)

| SCHEDULE A - INDIRECT FACTORY EXPENSE (Item 3) | | | |
|---|---|---|---|
| DETAIL OF EXPENSES | METHOD OF ALLOCATION | AMOUNT | FOR USE OF CONTRACTING AGENCY ONLY |
| Not Applicable | | | |
| | | | |
| | | | |
| | | | |
| | | | |

NOTE:  Individual items of small amounts may be grouped into a single entry in Schedules B, C, D, E, and G.

| SCHEDULE B - OTHER COSTS (Item 5) | | | |
|---|---|---|---|
| ITEM | EXPLANATION | AMOUNT | FOR USE OF CONTRACTING AGENCY ONLY |
| See Attached Spreadsheet | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| SCHEDULE C - GENERAL AND ADMINISTRATIVE EXPENSES (Item 6) | | | |
|---|---|---|---|
| DETAIL OF EXPENSES | METHOD OF ALLOCATION | AMOUNT | FOR USE OF CONTRACTING AGENCY ONLY |
| See Attached Spreadsheet | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| SCHEDULE D - PROFIT (Item 8) | | |
|---|---|---|
| EXPLANATION | AMOUNT | FOR USE OF CONTRACTING AGENCY ONLY |
| See Attached Spreadsheet | | |
| | | |
| | | |
| | | |
| | | |

(Where the space provided for any information is insufficient, continue on a separate sheet.)

STANDARD FORM 1439 (REV. 5/2004) PAGE 2

| SCHEDULE E – SETTLEMENT EXPENSES *(Item 12)* | | | |
|---|---|---|---|
| ITEM | EXPLANATION | AMOUNT | FOR USE OF CONTRACTING AGENCY ONLY |
| See Attached Spreadsheet | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| SCHEDULE F – SETTLEMENTS WITH IMMEDIATE SUBCONTRACTORS AND SUPPLIERS *(Item 14)* | | | |
|---|---|---|---|
| NAME AND ADDRESS OF SUBCONTRACTOR | BRIEF DESCRIPTION OF PRODUCT CANCELED | AMOUNT OF SETTLEMENT | FOR USE OF CONTRACTING AGENCY ONLY |
| See Attached Spreadsheet | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| SCHEDULE G – DISPOSAL AND OTHER CREDITS *(Item 16)* | | |
|---|---|---|
| DESCRIPTION | AMOUNT | FOR USE OF CONTRACTING AGENCY ONLY |
| See Attached Spreadsheet | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

(If practicable, show separately amount of disposal credits applicable to acceptable finished product included on SF 1428.)

(Where the space provided for any information is insufficient, continue on a separate sheet.)



STANDARD FORM 1436 *(REV. 5/2004)* PAGE 3



| | SCHEDULE H - ADVANCE, PROGRESS AND PARTIAL PAYMENTS (Item 19) | | |
|---|---|---|---|
| **DATE** | **TYPE OF PAYMENT** | **AMOUNT** | **FOR USE OF CONTRACTING AGENCY ONLY** |
| 12/08/2009 | Partial Payment for K-9's | 800,000.00 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

(Where the space provided for any information is insufficient, continue on a separate sheet.)

## CERTIFICATE

This is to certify that the undersigned, individually, and as an authorized representative of the Contractor, has examined this termination settlement proposal and that, to the best knowledge and belief of the undersigned:

(a) AS TO THE CONTRACTOR'S OWN CHARGES. The proposed settlement (exclusive of charges set forth in item 14) and supporting schedules and explanations have been prepared from the books of account and records of the Contractor in accordance with recognized commercial accounting practices; they include only those charges allocable to the terminated portion of this contract; they have been prepared with knowledge that they will, or may, be used directly or indirectly as the basis of settlement of a termination settlement proposal or claim against an agency of the United States; and the charges as stated are fair and reasonable.

(b) AS TO THE SUBCONTRACTORS' CHARGES. (1) The Contractor has examined, or caused to be examined, to an extent it considered adequate in the circumstances, the termination settlement proposals of its immediate subcontractors (exclusive of proposals filed against these immediate subcontractors by their subcontractors); (2) The settlements on account of immediate subcontractors own charges are fair and reasonable, the charges are allocable to the terminated portion of this contract, and the settlements were negotiated in good faith and are not more favorable to its immediate subcontractors than those that the Contractor would make if reimbursement by the Government were not involved; (3) The Contractor has received from all its immediate subcontractors appropriate certificates with respect to their termination settlement proposals, which certificates are substantially in the form of this certificate; and (4) The Contractor has no information leading it to doubt (i) the reasonableness of the settlements with more remote subcontractors or (ii) that the charges for them are allocable to this contract. Upon receipt by the Contractor of amounts covering settlements with its immediate subcontractors, the Contractor will pay or credit them promptly with the amounts so received, to the extent that it has not previously done so. The term "subcontractors," as used above, includes suppliers.

NOTE: The Contractor shall, under conditions stated in FAR 15.403, be required to submit a Certificate of Current Cost or Pricing Data (see FAR 15.406-2 and 15.408 Table 15-2).

| NAME OF CONTRACTOR<br>Securitas Security Services USA, Inc.<br>1333 Butterfield Road Suite 410<br>Downers Grove, IL. 60515<br>630-441-1384 | BY (Signature of authorized official) |
|---|---|
| | TITLE<br>Area Vice President | DATE<br>3/16/2010 |
| NAME OF SUPERVISORY ACCOUNTING OFFICIAL<br>Tom Cantion | TITLE<br>Corporate Vice President, Finance |

STANDARD FORM 1436 (REV. 5/2004) PAGE 4

